TENACRE FOUNDATION, Appellant,

v.

IMMIGRATION & NATURALIZATION
SERVICE and Department of
Justice, Appellees.

No. 95–5294.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 4, 1996.

Decided March 19, 1996.

Lawrence P. Lataif argued the cause and filed the briefs, Ft. Lauderdale, FL, for appellant.

Marina U. Braswell, Assistant United States Attorney, argued the cause for appellee, with whom Eric H. Holder, Jr., United States Attorney, and R. Craig Lawrence, Assistant United States Attorney, were on the brief. Carlos O. Miranda entered an appearance.

Before: EDWARDS, Chief Judge, SILBERMAN and GINSBURG, Circuit Judges.

Opinion for the Court filed by Chief Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Chief Judge:

Tenacre Foundation ("Tenacre") appeals from the District Court's denial of Tenacre's motion for a preliminary injunction against the Immigration and Naturalization Service ("INS"). Tenacre's dispute with INS arose out of a petition filed by Tenacre on behalf of James Kihu, an employee at Tenacre's Christian Science health care facility in New Jersey, seeking to change Kihu's visa status from that of a student (F–1 visa classification) to that of a nonimmigrant religious worker (R–1 visa classification). Pursuant to an INS regulation requiring that the beneficiary of an R–1 visa be "qualified" in the religious occupation forming the basis for the visa application, *see* 8 C.F.R. § 214.2(r)(3)(ii)(C)(3) (1993), INS denied the Kihu petition on the ground that Tenacre's filings showed that Kihu was "training" to become a Christian Science nurse and therefore was not yet "fully qualified" for the religious occupation of Christian Science nursing. Tenacre filed suit in the District Court, contending that INS's interpretation of its "qualification" requirement in the Kihu

case evidenced a "policy" of denying visas to entry-level Christian Science nurses merely because they would receive some training while on the job. Tenacre also asserted that this purported policy unlawfully added a "prior work" condition to the statutory requirements governing R–1 visas. According to Tenacre, the alleged "policy" at issue violated the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), the First Amendment, and the Religious Freedom Restoration Act ("RFRA").

Although the District Court found that Tenacre was likely to succeed on the merits of its APA claim, Tenacre's request for preliminary injunctive relief was denied for lack of an adequate showing of irreparable harm. Because neither the District Court nor this court has found any concrete support for the claim that INS has adopted an unlawful "policy" with regard to R–1 visa applicants, we must affirm the judgment of the District Court. We note, in particular, that during oral argument before this court, INS conceded the principal points in issue, thus effectively negating the claim that the agency has adopted a suspect "policy." We find nothing in the record before us, or in the findings of the District Court, to refute these concessions, so we conclude there is little likelihood that Tenacre will succeed on the merits of any of its claims. Accordingly, we affirm the District Court's denial of the requested preliminary injunction without reaching the issue of irreparable harm.

## I. BACKGROUND

On May 17, 1993, Tenacre filed with INS a petition seeking to change Kihu's visa status from an F–1 student classification to an R–1 nonimmigrant religious worker classification. Kihu, a native of Kenya, had been employed at Tenacre's Christian Science nursing facility for almost a year prior to Tenacre's petition for status change. Tenacre stated that it was requesting the status change from student to religious worker so that Kihu could "continue his on-the-job training in the religious occupation of Christian Science nursing, while concurrently continuing his extensive preparation for becoming a Christian Science nurse." Petition for R–1 Nonimmigrant Religious Worker for James N. Kihu at 3, reprinted in Appendix to Brief of Appellant ("App.") 163, 165. Tenacre further represented that "Kihu's long-term goal is to represent himself as a Christian Science nurse in The Christian Science Journal, . . . . [which] lists the names of Christian Science practitioners and nurses, in order that the public may have access to and may contact these highly-skilled healers." Id. In this initial submission, Tenacre made it clear that Kihu would "continue to work as a Christian Science nurses aide" during "the preparation process at Tenacre," id., and attached to the petition a job description entitled "Christian Science Nurses Aide," reprinted in App. 242–43.

On June 1, 1993, INS sent Tenacre a notice stating that, because the purpose of the petition was to "train" Kihu to become a Christian Science nurse, Kihu was not eligible for R–1 religious worker status. In other words, INS indicated that Kihu could not get an R–1 visa until "fully qualified" to be employed in a religious occupation. Notice of Action, United States Department of Justice, Immigration and Naturalization Service, reprinted in App. 158. INS based its view on regulations implementing statutory provisions relating to the R–1 visa classification.[1]

Through subsequent filings with INS, Tenacre attempted to recast Kihu's position at Tenacre as that of an "entry-level" Christian

---

1. The INA allows for an R–1 visa for a nonimmigrant alien if he or she "for the 2 years immediately preceding the time of application for admission, has been a member of a religious denomination having a bona fide nonprofit, religious organization in the United States" and "seeks to enter the United States for a period not to exceed 5 years" in order to work for the religious organization "in a religious vocation or occupation." See 8 U.S.C. § 1101(a)(15)(R) & 1101(a)(27)(C)(ii)(III) (Supp.1995).

INS's implementing regulations require that "[a]n alien seeking classification as a nonimmigrant religious worker shall present ... documentation" from "an authorized official of the specific organizational unit of the religious organization which will be employing the alien ... in the United States" establishing that "he or she is qualified in the religious vocation or occupation." See 8 C.F.R. § 214.2(r)(3)(ii)(C)(3) (1993).

Science nurse (rather than that of a "nurse's aide"). *See, e.g.,* Motion to Reopen and Motion for Reconsideration at 9, *reprinted in* App. 48, 56. Tenacre never contended that the position of "nurse's aide" is itself a traditional religious occupation within the Christian Science denomination. Indeed, in one of its revised submissions, Tenacre not only claimed that Kihu would not be working as a "nurse's aide," but that there was no such position. Request to Reopen, *reprinted in* App. 132. In conjunction with this revised claim, Tenacre sought to persuade INS that Kihu, though a novice, was in fact functioning as a Christian Science nurse, which INS concedes is a traditional religious occupation. This claim fell on deaf ears. Despite Tenacre's voluminous filings in support of its requests for reconsideration, INS remained unconvinced that Kihu was fully qualified to function as a Christian Science nurse. Ultimately, INS issued a final agency action on October 11, 1994, denying Tenacre's petition to change Kihu's visa status. *See* Decision of INS Administrative Appeals Unit *In Re* Petitioner Tenacre Foundation, *reprinted in* App. 1.

Over seven months later, on May 19, 1995, Tenacre filed suit against INS in the District Court, contending that INS's interpretation of its regulations, as evidenced by the agency's treatment of the Kihu petition, effectively imposed on R–1 visa applicants a "prior work" requirement nowhere found in the statutory provisions governing the R–1 visa classification. Further, Tenacre alleged that INS's application of its "qualification" requirement evidenced a "policy" of denying R–1 visa status to entry-level Christian Science nurses who would receive *any* training while working at Tenacre, notwithstanding Tenacre's assertions that the applicant would be functioning as a Christian Science nurse,

as defined by the Christian Science denomination. Tenacre asserted that INS's purported policy violated the INA, APA, RFRA, and First Amendment.

On June 14, 1995, Tenacre filed a motion for a preliminary injunction, which the District Court denied by order on July 13, 1995. In its decision denying preliminary injunctive relief, the District Court found that Tenacre had a significant likelihood of success on the merits of its APA claim, but that Tenacre had "not adequately shown that it will suffer irreparable harm absent a preliminary injunction." *Tenacre Found. v. INS,* Civ. Action No. 95–945, slip op. at 11 (D.D.C. July 13, 1995), *reprinted in* App. 378, 388. In the trial court's view, Tenacre's allegations of harm to its First Amendment right to the free exercise of the Christian Science religion "are, at this juncture, only speculative," whereas, "[t]o constitute irreparable harm, plaintiff's alleged injury must be 'certain and great,' not theoretical." *Id.* at 11–12 (quoting *Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C.Cir.1985) (per curiam)), *reprinted in* App. 388–89. In this regard, the court observed that Tenacre "makes no statement … that any particular applicant aside from James Kihu has been or will be in the imminent future screened out from an R–1 visa." *Id.* at 11, *reprinted in* App. 388.[2]

The District Court's decision also noted the dispute between Tenacre and INS over Kihu's status—*i.e.,* whether he would have been functioning at Tenacre as a Christian Science nurse or nurse's aide. But the trial court made no clear ruling on the issue, presumably because Tenacre's law suit focused on INS's alleged "policy," rather than on Kihu's petition, and, in addition, because Kihu's application was no longer pending at the time of the preliminary injunction determination.[3] The trial court also noted INS's

2. In addition, the court observed that Tenacre waited seven months after receiving the final notice from INS's Administrative Appeals Unit before filing suit in the District Court, and waited another month after filing suit to file a motion for a preliminary injunction; in the court's view, "the time lapse undermines any assertions that [Tenacre] will suffer irreparable harm if the Court does not grant preliminary injunctive relief." *Tenacre,* slip op. at 12 n. 5, *reprinted in* App. 389.

3. Indeed, Kihu was no longer employed at Tenacre at the time of the District Court's decision. *See Tenacre,* slip op. at 11, *reprinted in* App. 388. However, the District Court found that Tenacre "at some point will again" attempt to secure an R–1 visa for Kihu "so that he might continue his work at Tenacre," *id.* at 10 n. 3, *reprinted in* App. 387, so it appears that INS's decision as to Kihu's qualification for Christian Science nursing may yet be relevant.

contention that Tenacre "mischaracterizes" INS's action on the Kihu petition "as a 'policy,' when in fact no policy of denying visas to entry-level Christian Science nurses exists." *Id.* at 10 n. 3, *reprinted in* App. 387. However, the District Court found that, "[a]t this stage in the proceedings, ... it is impossible to discern whether the policy [Tenacre] alleges exists is, in fact, a policy." *Id.*

On July 25, 1995, Tenacre moved to amend the District Court's July 13, 1995, order denying preliminary injunctive relief. Among other things, Tenacre argued in its motion that its injury was not speculative, because "Tenacre currently has on staff several foreign national nurses who, because they are in training, are threatened with denial [of applications for extension of R–1 status] under the INS policy absent a preliminary injunction." Plaintiff's Motion to Amend Order at 3, *reprinted in* App. 391, 393. In particular, Tenacre referenced the fact that the R–1 visa of one of its foreign national nurses, Rosalind Grande, was due to expire on July 25, 1995, *id.*, and attached as an exhibit an unfiled application for extension of Ms. Grande's R–1 status, *see* [Unfiled] Request for Extension of R–1 Nonimmigrant Religious Worker Status, *reprinted in* App. 397.[4]

On August 24, 1995, the District Court refused Tenacre's request to amend the court's July 13, 1995, order. Thereafter, Tenacre appealed to this court. During the pendency of the appeal, Tenacre apparently filed Ms. Grande's extension application on November 8, 1995, after having been denied emergency relief from this court on October 30, 1995. Reply Brief of Appellant at 7–8.

## II. ANALYSIS

In general, "[this court's] review of district court decisions to grant or deny preliminary relief is conducted under the extremely deferential clear error or abuse of discretion standard." *City of Las Vegas v. Lujan*, 891 F.2d 927, 931 (D.C.Cir.1989). In this case, the District Court based its decision to deny preliminary injunctive relief on Tenacre's failure to show irreparable harm. Tenacre argues that this decision was unjustified and, in any event, irrelevant, because the District Court found a significant likelihood of success on the merits. We need not address Tenacre's claims on irreparable harm, because we find that, in light of the District Court's findings and several concessions made by the parties at oral argument, there is no basis for a judgment at this juncture that Tenacre is likely to succeed on the merits of any of its claims. In short, in the posture in which the case now stands, it is clear that a preliminary injunction is unwarranted.

The gravamen of Tenacre's claims is that INS has adopted an unlawful "policy" of denying R–1 visas to those engaged in "training" while working in a religious occupation—a policy of which James Kihu and Rosalind Grande are allegedly victims and which allegedly burdens Tenacre's free exercise of its religious rights. However, on the record as it now stands, we can find no "policy" of the sort described by Tenacre.

INS's treatment of the Kihu petition certainly does not establish that INS has adopted an unlawful policy. The problem there arose because Tenacre initially sought an R–1 visa to employ Kihu as a "nurse's aide"—*in training to be* a "nurse"—during a "preparation" period that would culminate in Kihu becoming qualified to advertise as a Christian Science nurse in *The Christian Science Journal.* Based on these representations, INS not surprisingly resisted the request for an R–1 visa classification, because Tenacre failed to show that Kihu would be *functioning within a religious occupation,* which both parties agreed at oral argument is the appropriate factor for determining whether an applicant should be granted R–1 visa status. In the face of INS's legitimate resistance to the Kihu petition as originally

4. Tenacre stated that it was seeking the protection of a preliminary injunction *before* filing Ms. Grande's extension application, and before accepting other foreign national applicants for entry-level nurse positions, because filing additional visa applications without the benefit of a preliminary injunction "will place [Tenacre] in an untenable dilemma. If [INS] den[ies] the visa application, [Tenacre] will be forced to abandon the visa application or endure additional lengthy and costly administrative appeals." Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion to Amend Order at 2–3, *reprinted in* App. 422, 423–424.

drafted, Tenacre never contended that the position of "nurse's aide" is a traditional religious occupation. Instead, Tenacre sought to clarify the record to show that Kihu would be functioning, not as an "aide," but as a "nurse," which INS agrees is a traditional religious occupation within the Christian Science order.

Thus, the appropriateness of INS's denial of the Kihu petition boils down to the *factual question* of whether Kihu would have been employed as a Christian Science nurse, or, rather, would have been *training to become* a nurse. That factual issue remains to be resolved. *See* note 3 *supra.* The main point here is that the Kihu case in no way demonstrates that INS is enforcing an unlawful "policy." Indeed, even though the District Court considered the Kihu petition "to be the quintessential test case for the regulations" at issue, the trial court declined to find that INS's treatment of the Kihu petition manifested a suspect "policy." *See Tenacre,* slip op. at 10 n. 3, *reprinted in* App. 387.

Apart from the unresolved dispute in the Kihu case, we find no evidence that INS has improperly imposed any additional "qualification" requirement, beyond the appropriate requirement that applicants be functioning within a religious occupation to qualify for R–1 visa status. The agency's regulations do not impose an additional requirement, *see* note 1 *supra,* and Tenacre points to no material evidence to prove the point. Tenacre's citation of Ms. Grande's application, *see* note 4 *supra,* merely *assumes* the existence of an illegal policy. There is no indication in the record before us that Ms. Grande's application has been denied on suspect grounds.

This case is full of ironies: Tenacre fears that which INS concedes is not possible, while at the same time acknowledging that the statute and implementing regulations governing R–1 visa applications are facially lawful and constitutional. Tenacre claims that, as a matter of policy, INS will not grant an R–1 visa if an employee is to receive "training" while working in a religious occupation. However, at oral argument, INS conceded that no such requirement exists under the applicable statute or regulations, or in practice, and Tenacre cites nothing to refute this. INS further argued that what the statute and regulations do require is that

an applicant show that he or she will be *functioning within the religious occupation,* not merely *training to enter* that occupation. Tenacre conceded that this condition does not infringe any statutory or constitutional rights of applicants seeking R–1 visas, or of organizations like Tenacre who support these applications. INS also conceded that an individual may be seen to be *functioning within a religious occupation* (for purposes of an R–1 visa application) even though the individual has had no prior experience or training in that occupation. And finally, INS agreed that it must accept the good-faith explanations of a religious order as to what it means to be functioning within a religious occupation of that order.

Thus, INS has effectively disavowed any potential basis for a finding that the agency has adopted a suspect policy governing R–1 visa applications, and Tenacre has shown nothing to the contrary. In the absence of any such "policy," Tenacre's likelihood of success on the merits of any of its claims is virtually nil, and we agree with the District Court, albeit on different grounds, that no basis presently exists for the issuance of a preliminary injunction.

As the record now stands, it appears that Tenacre will win for losing, because INS has conceded away most of what the parties claimed to be at issue at the start of this appeal. Moreover, it appears that the District Court could discern no suspect "policy" from INS's treatment of the pending Grande application, nor can this court. We assume that Ms. Grande's application (and any others before INS) will be treated in a fashion consistent with the applicable statute, the implementing regulations, and the representations made by agency counsel to this court. Any further disputes in this regard can be resolved by the District Court.

### III. CONCLUSION

For the reasons set forth above, the District Court's denial of Tenacre's request for a preliminary injunction is affirmed.

*So ordered.*