**GRAND LODGE OF THE FRA-
TERNAL ORDER OF PO-
LICE, Plaintiff,**

v.

**John ASHCROFT, United States Attor-
ney General, and the United States
of America, Defendants.**

Civil Action No. 01–90(RMU).

United States District Court,
District of Columbia.

Aug. 14, 2001.

C. David Henderson, Santa Fe, NM, for plaintiff.

Steven H. Rosenbaum, U.S. Department of Justice, Washington, DC, for defendants.

## *MEMORANDUM OPINION*

URBINA, District Judge.

### Granting the Defendants' Motion to Dismiss

### I. INTRODUCTION

This matter is before the court on the defendants' motion to dismiss for lack of subject-matter jurisdiction or, alternatively, for failure to state a claim on which relief can be granted. The plaintiff, the Grand Lodge of the Fraternal Order of Police ("Grand Lodge"), seeks a declaratory judgment stating that Section 14141 of the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141, is unconstitutional as enforced because it interferes with the rights of local and state law-enforcement agents, thereby disturbing the balance of power between federal and state governments. Grand Lodge also

asks the court to enjoin the defendant from undertaking certain enforcement actions pursuant to Section 14141 to the extent that those actions affect members of the plaintiff's organization. The defendants argue that Grand Lodge lacks standing and that its claims are not ripe. For the reasons stated below, the court will grant the defendants' motion to dismiss for lack of subject-matter jurisdiction.

## II. BACKGROUND

Grand Lodge is a non-profit fraternal organization that represents the interests of law-enforcement officers throughout the United States. *See* Compl. ¶ 6. Membership in Grand Lodge's affiliated lodges "is limited to persons who support and defend the Constitution of the United States and promote and foster the enforcement of law and order." *Id.* ¶ 8. In conjunction with its state and local affiliates, Grand Lodge provides legal representation to its members in matters concerning collective-bargaining agreements and internal police affairs and procedures. *See id.* ¶ 16. Grand Lodge also advocates on behalf of its members before Congress and state legislatures and courts. *See id.*

According to the defendants, Congress enacted the Violent Crime Control and Law Enforcement Act of 1994 in response to the beating of Rodney King by members of the Los Angeles Police Department. *See* Defs.' Mot. to Dismiss at 3. Section 14141 of the Act provides the United States with a remedy in the form of injunctive and declaratory relief, but not damages, against systemic police misconduct. *See* 42 U.S.C. § 14141. Subsection (a) of the Act provides that it is unlawful

for any government official "to engage in a pattern or practice of conduct ... that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or the laws of the United States." 42 U.S.C. § 14141(a). Subsection (b) authorizes the U.S. Attorney General to file a civil action seeking "appropriate equitable and declaratory relief to eliminate the pattern or practice" referenced in subsection (a). *See id.* § 14141(b).

Pursuant to its powers under Section 14141, the United States, through the Department of Justice ("DOJ"), has undertaken investigations of law-enforcement agencies in at least fourteen cities.[1] *See* Compl. ¶ 25. Based on these investigations, DOJ has initiated lawsuits against five state and local governments. In Pittsburgh, Pennsylvania, and in Steubenville and Columbus, Ohio, for example, DOJ has filed suits alleging a pattern or practice of excessive force, false arrests, and improper searches. *See* DOJ Police Misconduct Pattern or Practice Program, Defs.' Reply in Support of Mot. to Dismiss, Ex. A, at 7. DOJ has also filed suit against the New Jersey State Police, alleging a pattern of racially discriminatory traffic stops and searches. *See id.*

In the Pittsburgh, Steubenville, and New Jersey lawsuits, the parties have negotiated settlements through the imposition of court-authorized consent decrees. *See* Compl. ¶¶ 33, 35. A consent decree resolving DOJ's claims against the city of Los Angeles is awaiting entry by the court. *See* Defs.' Mot. to Dismiss at 5. In Columbus, DOJ has been unable to negotiate a consent decree. *See id.* at 6. Grand

---

1. The cities currently under investigation include: Buffalo, New York; Charleston, West Virginia; Eastpointe, Michigan; Los Angeles, California; New Orleans, Louisiana; New York, New York; Orange County, Florida; Prince George's County, Maryland; Riverside, California; and Washington, D.C. *See* Compl. ¶ 26. DOJ does not make the findings of the investigations public. *See id* ¶ 27.

Lodge claims that by intervening in the Columbus litigation,[2] it was able to prevent DOJ and the city from entering into a consent decree. *See* Compl. ¶¶ 37, 51.

Grand Lodge sets forth three causes of action in its complaint: (1) "Section 14141 is invalid because it exceeds the scope of congressional power under Section 5 of the Fourteenth Amendment" or, in the alternative, the defendants' application of the statute is erroneous and/or unconstitutional, *see id.* ¶¶ 58–59; (2) the defendants should be enjoined from applying Section 14141 in the form of consent decrees, because the terms of such agreements generally impinge on the legal interests of police officers, *see id.* ¶¶ 72, 76; and (3) the defendants should be enjoined from applying Section 14141 through the use of consent decrees, because there is no evidence on the record that demonstrates the defendants' past compliance with Federal Rules of Civil Procedure 52 and 65(d),[3] *see id.* ¶¶ 82–83.

## III. DISCUSSION

### A. Legal Standard

The defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, Rule 12(b)(6). Rule 12(b)(1) deals with the court's subject-matter jurisdiction, while Rule 12(b)(6) "presents a ruling on the merits with a res judicata effect." *See Haase v. Sessions*, 835 F.2d 902, 906 (D.C.Cir.1987). In the present case, the defendants argue that Grand Lodge has not fulfilled the constitutional requirement of standing. *See* Defs.' Mot. to Dismiss at 2. "The defect of standing is a defect in subject matter jurisdiction." *Haase*, 835 F.2d at 906. Therefore, the court will confine its consideration to the 12(b)(1) motion to dismiss.

Under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction. *See District of Columbia Retirement Bd. v. United States*, 657 F.Supp. 428, 431 (D.D.C.1987). Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority. *See* 5A Charles A. Wright & Arthur R. Miller, FED.PRAC. & PROC.CIV.2D, § 1350. For this reason, "the [p]laintiff's factual allegations in the complaint ... will bear closer scrutiny in re-

---

2. Columbus was the only case in which Grand Lodge was permitted to intervene. In Pittsburgh, the court determined that the consent decree did not violate the union's collective bargaining agreements and denied Grand Lodge's motion to intervene. *See* Defs.' Mot. to Dismiss at 4 (citing Tr. of Hr'g, Ex. A at 76–77). In Steubenville, the court denied Grand Lodge's motion to intervene, holding that Grand Lodge "did not have a 'significantly protectable' interest in the lawsuit to merit intervention." *See* Defs.' Mot. to Dismiss at 5 (citing *United States v. Steubenville*, No. 2:97-CV-966, slip op. at 1 (S.D.Ohio July 23, 1998) (attached as Ex. B)). "Similarly, in Los Angeles, the court denied the Los Angeles Police Protective League's motion to intervene on the grounds that the union did not have a legally protectable interest in the litigation."

*See* Defs.' Mot. to Dismiss at 6 (citing *United States v. Los Angeles*, No. CV 00–11769, slip op. at 1 (C.D.Cal. Jan 5, 2001) (attached as Ex. D)). Grand Lodge did not attempt to intervene in DOJ's section 14141 suit against the New Jersey State Police. *See* Defs.' Mot. to Dismiss at 5.

3. Rule 52 relates to "Findings by the Court" and "Judgment on Partial Findings" while Rule 65 deals with Preliminary Injunctions and Temporary Restraining Orders. The plaintiff does not say precisely how the defendants failed to comply with these Rules, just that "Defendants failed to establish the basic legal requisites for the courts to issue permanent equitable relief under Rule 52 or 65." *See* Compl. ¶ 52.

solving a 12(b)(1) motion" than in resolving a 12(b)(6) motion for failure to state a claim. *See id.*

■ In deciding a 12(b)(1) motion, the court need not limit itself to the allegations of the complaint. *See Hohri v. United States,* 782 F.2d 227, 241 (D.C.Cir.1986), *vacated on other grounds,* 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). Rather, "[t]he court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." *Scolaro v. D.C. Board of Elections and Ethics,* 104 F.Supp.2d 18, 22 (D.D.C.2000) (citing *Herbert v. Nat'l Academy of Sciences,* 974 F.2d 192, 197 (D.C.Cir.1992)); *see also Haase v. Sessions,* 835 F.2d 902, 906 (D.C.Cir.1987).

### B. Standing Analysis
#### 1. Legal Standard

■ Article III of the United States Constitution limits the role of federal courts to the resolution of "cases" or "controversies." *See* U.S. Const. Art. III, § 2, cl. 1. "A showing of standing 'is [therefore] an essential and unchanging' predicate to any exercise of [federal court] jurisdiction." *Florida Audubon Soc. v. Bentsen,* 94 F.3d 658, 663 (D.C.Cir.1996) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The standing requirement serves important goals: separation of powers, judicial efficiency, the improvement of judicial decision-making and fairness. *See, e.g., Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (discussing the limited role of courts in a democratic society); *United States v. Richardson,* 418 U.S. 166, 192, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) (Powell, J., concurring) (standing requirement prevents a flood of lawsuits); *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)

(standing requirement ensures that a litigant has "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends...."); *Singleton v. Wulff,* 428 U.S. 106, 113–114, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) ("courts should not adjudicate ... rights unnecessarily").

■ The Supreme Court has framed the law of standing as a narrow, three-part test:

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual and imminent, not 'conjectural or hypothetical.'" Second, there must be a "causal connection between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant...." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130 (citations omitted). Courts consider the injury-in-fact prong the "principal limitation imposed by Article III." *See, e.g., McKinney v. United States Dep't of Treasury,* 799 F.2d 1544 (Fed.Cir.1986). Under this prong, a future injury is imminent only if the injury is "certainly impending," *Lujan,* 504 U.S. at 565 n. 2, 112 S.Ct. 2130; speculative allegations of future injury will not suffice. *See Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Tenacre Found. v. INS,* 892 F.Supp. 289, 294 (D.D.C.1995), *aff'd,* 78 F.3d 693 (D.C.Cir.1996).

■ Even if a party satisfies the constitutional requirements of standing, the courts may still deny standing on prudential grounds. *See, e.g., Gladstone, Real-*

tors v. *Village of Bellwood,* 441 U.S. 91, 99–100, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). The prudential rules of standing serve to limit the role of courts in resolving public disputes. *See, e.g., Warth,* 422 U.S. at 499, 95 S.Ct. 2197. For example, courts may deny standing to litigants who present the court with generalized grievances shared by many persons, which can be better addressed by the political process. *See id.* In addition, courts may decline to hear cases in which litigants "seek to assert the rights of third parties or to proffer grievances not relevant to the 'zone of interests' intended to be protected or regulated by the statute or constitutional guarantee in question." *Navegar, Inc. v. United States,* 103 F.3d 994, 998 (D.C.Cir.1997).

■■■■ There are additional rules of standing when the plaintiff is an association. An association may sue on its own behalf or, as in the present case, on behalf of its members. *See, e.g., United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544, 552, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996). An association has standing to sue on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests the organization seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of in-

dividual members in the lawsuit. *See Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *see also National Lime Ass'n. v. E.P.A.,* 233 F.3d 625, 637 (D.C.Cir.2000).

## 2. The Injuries that the Plaintiff Fears Are Not Imminent, but Merely Conjectural and Hypothetical

■■■■ In the present case, Grand Lodge claims to have standing to bring a pre-enforcement suit on behalf of its members.[4] Thus, under the test outlined in *Hunt,* the court must first determine whether Grand Lodge's "members would otherwise have standing to sue in their own right." *Hunt,* 432 U.S. at 343, 97 S.Ct. 2434. This brings the court to the test outlined in *Lujan.*

■■■■ The gravamen of the plaintiff's standing argument is that, given the defendants' past use of consent decrees to enforce Section 14141—and given the alleged illegalities surrounding those decrees—any future enforcement of Section 14141 will involve more consent decrees and repeated illegalities. *See* Pl.'s Resp. at 27–28. The court does not deny that "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *O'Shea v. Littleton,* 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). But even assuming

---

4. The fact that Grand Lodge seeks a declaratory judgment does not obviate its need to show standing. The Declaratory Judgment Act permits federal courts to "declare the rights and other legal relations" of parties to "a case or actual controversy." *See* 28 U.S.C. § 2201. The Act does not enlarge the jurisdiction of federal courts beyond what is constitutionally permissible, but merely widens the range of remedies that federal courts have at their disposal. *See Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). The sole require-

ment for jurisdiction under the Act is that the conflict be "real and immediate, *i.e.,* that there be a true, actual 'controversy.'" *See Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 735 (Fed.Cir.1988). The "actual controversy" requirement, in turn, mirrors the "case or controversy" requirement of Article III of the United States Constitution. *See Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937). Thus, the Declaratory Judgment Act requires no more or less rigorous a showing of justiciability than the Constitution does.

*arguendo* that the defendants have committed past wrongs in their use of consent decrees to enforce Section 14141, the chain of events that would need to occur for the defendants to commit these alleged wrongs again is simply too attenuated to be a real and immediate threat. *See Lujan,* 504 U.S. at 564 n. 2, 112 S.Ct. 2130 ("Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is 'certainly impending.' It has been stretched beyond the breaking point when . . . the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control.").

In *O'Shea,* the Supreme Court rejected a chain-of-events theory of standing similar to that advanced by Grand Lodge. *See O'Shea,* 414 U.S. at 497–99, 94 S.Ct. 669. The plaintiffs in *O'Shea,* residents of Cairo, Illinois, alleged that county officials were engaging in discriminatory bail-setting, jury selection and sentencing. *See id.* at 492, 94 S.Ct. 669. A lower court granted the plaintiffs' request for an injunction and ordered the county to prevent the defendants from "depriving others of their constitutional rights in the . . . future." *Id.* at 493, 94 S.Ct. 669. The Supreme Court reversed, stating that:

> here the prospect of future injury rests on the likelihood that respondents *will again* be arrested for and charged with violations of the criminal law and *will again* be subjected to bond proceedings, trial, or sentencing before petitioners . . . . Apparently, the proposition is that if respondents proceed to violate an unchallenged law and if they are charged, held to answer, and tried in any proceedings before petitioners, they will be subjected to the discriminatory practices that petitioners are alleged to have followed.

*Id.* at 496–97, 94 S.Ct. 669 (emphasis added). Finding that this chain of events "takes [the Court] into the area of speculation and conjecture," the Court held that the plaintiffs failed to show standing.[5] *See id.*

As in *O'Shea,* the danger that the defendants' enforcement of Section 14141 will injure a member of Grand Lodge depends on a hypothetical chain of events which is neither actual nor imminent. Section 14141 merely asks that law enforcement officers and other governmental authorities abstain from behavior that "deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." *See* 42 U.S.C. § 14141(a). If the Attorney General "has reasonable cause to believe" that such deprivations are occurring, he "*may* in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice." 42 U.S.C. 14141(b) (emphasis added). Thus, in the chain of events that would need to occur for the plaintiff to meet the first element of the *Lujan* test, the government first would have to believe that a law enforcement agency was engaging in an unconstitutional or illegal pattern of behavior. The government would then have to decide to pursue the matter under Section 14141, and would need to resolve the matter with a consent decree rather some other form of relief. And, of course, in this scenario, a member of the agency would have to be a member of the plaintiff's organization—and would have to make out a good-faith claim that the government's enforcement

---

5. The Court also noted that it expected the plaintiffs to follow the law and thus avoid prosecution in the first place. *See O'Shea,* 414 U.S. at 496–97, 94 S.Ct. 669.

of Section 14141 was violating his own rights.

There is no way for this court to predict with any certainty whether such events will unfold. Furthermore, the plaintiffs have failed to offer any decision holding that circumstances similar to those in the plaintiff's case can satisfy the injury-in-fact requirement. Indeed, the cases on which the plaintiff relies have involved injuries far less speculative than those presently alleged. *See, e.g., Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 73–74, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978) (environmental group challenging proposed nuclear facility meets injury-in-fact requirement because of "the environmental and aesthetic consequences of the thermal pollution of the two lakes *in the vicinity* " and "the emission of non-natural radiation *into [the plaintiff's] environment* ") (emphasis added); *Louisiana Envtl. Action Network v. E.P.A.*, 172 F.3d 65, 67–68 (D.C.Cir.1999) (environmentally concerned citizens challenging EPA regulation governing the treatment of hazardous waste in landfills meets injury-in-fact requirement because several of the group's members *lived near a landfill site* where, under the challenged EPA regulation, waste companies had a significant financial incentive to dump "low quality" waste); *Fraternal Order of Police v. United States*, 981 F.Supp. 1, 3 (D.D.C.1997) (Fraternal Order of Police meets injury-in-fact requirement to challenge on behalf of its members a law that prohibits the possession of firearms by persons convicted of domestic violence misdemeanors because the law forced certain members of the Order to be assigned to lesser positions in their departments or put on leave, prevented them from working in off-duty security jobs, and generally impeded their ability to act as police officers), *reversed on other grounds*, 152 F.3d 998 (D.C.Cir. 1998). In contrast to the above cases, any

possible future injury to Grand Lodge members is conjectural and hypothetical at best. Accordingly, the court dismisses the plaintiff's complaint for lack of standing.

### 3. Ripeness

 The defendants also assert that the plaintiff's claims are not ripe for review. But "[b]ecause issues of standing, ripeness, and other such 'elements' of justiciability are each predicate to any review on the merits, a court need not identify all such elements that a complainant may have failed to show in a particular case." *Louisiana Envtl. Action Network v. Browner*, 87 F.3d 1379, 1385 (D.C.Cir. 1996); *see also Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998) (deciding case on ripeness grounds even though petitioner argued the case was nonjusticiable on both standing and ripeness grounds); *Association of American Railroads v. Surface Transp. Bd.*, 146 F.3d 942 (D.C.Cir. 1998) (same).

 Were the court to address the ripeness of the plaintiff's claim, however, the claim would succumb to problems similar to those discussed above. The test for ripeness—which requires a court to "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration," *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)— makes this clear. With respect to the "fitness for judicial decision" prong, a claim is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Products Co.*, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985). Similarly, with respect to the "hardship to the parties" prong, an abstract harm is not sufficient; there must be an immediate

18

harm with a "direct effect on the day-to-day business of the plaintiffs." *Texas,* 523 U.S. at 301, 118 S.Ct. 1257 (quoting *Abbott Labs.,* 387 U.S. at 152, 87 S.Ct. 1507) (internal citations omitted). Thus, in light of the conjectural nature of the plaintiff's future injuries, the plaintiff would be unable to demonstrate ripeness.

## IV. CONCLUSION

For all these reasons, the court grants the defendants' motion to dismiss. An order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously issued this 14 day of August 2001.

### *ORDER*

#### Granting the Defendants' Motion to Dismiss

Upon consideration of the defendants' Motion to Dismiss, and for the reasons stated in the court's Memorandum Opinion,

it is this *14th* day of August 2001,

**ORDERED** that the defendants' motion be **GRANTED;** and it is

**FURTHER ORDERED** that the plaintiff's motion to allow discovery be **DENIED as moot.**

**SO ORDERED.**