**BRADY CAMPAIGN TO PREVENT GUN VIOLENCE UNITED WITH THE MILLION MOM MARCH,** Plaintiff,

v.

**John ASHCROFT, Attorney General of the United States, et al.,** Defendants.

No. CIV.A. 04–454(RCL).

United States District Court, District of Columbia.

Sept. 10, 2004.

Daniel Ryan Vice, Washington, DC, for Plaintiff.

John E. Smith, United States Department of Justice Civil Division, Federal Programs Branch, Washington, DC, for Defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the Court on the government's motion to dismiss and

for summary judgment on the question of subject-matter jurisdiction. In its motion, the government argues that the plaintiff's challenge, under §§ 921–23 of the Gun Control Act, to certain procedures of the federal Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") fails to constitute a justiciable controversy under Article III because the plaintiff fails to show that it has the requisite standing to bring this action. Additionally, the government contends that the plaintiff's claims are both unripe and barred by the six-year statute of limitations on civil suits brought against the United States.[1] Upon consideration of the filings and arguments by counsel, the Court concludes that the plaintiff has failed to sufficiently demonstrate standing to bring this action. Because the plaintiff lacks standing, a jurisdictional prerequisite, the Court shall grant the government's motion for summary judgment on jurisdictional grounds, and the plaintiff's complaint shall be dismissed. The Court's reasoning is set out below.

## I. Background

On September 13, 1994, Congress enacted the Violent Crime Control and Law Enforcement Act (the "1994 Act") which, among other things, amended the Gun Control Act of 1968 to restrict the manufacture, transfer, or possession of certain semiautomatic assault weapons ("SAWs") and large capacity ammunition feeding devices. See Pub.L. No. 103–332, 108 Stat. 1796 §§ 110101–110106, codified at 18 U.S.C. §§ 921–24 (1994), § 922(v)(1). "Semiautomatic assault weapon" is defined by the statute to include a list of named "firearms," copies and duplicates of those on that list, and "firearms" possessing certain features. See 18 U.S.C. § 921(a)(30). The statute defines "firearm," in turn, as:

(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of the explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

18 U.S.C. § 921(a)(3).

A "grandfather clause" in the 1994 Act exempted from regulation the possession or transfer of SAWs legally possessed before the effective date of the amendments. 18 U.S.C. § 922(v)(2). The amendments are set to expire on September 13 of this year. Pub.L. No. 103–332, 108 Stat. 1796 § 110105.

The plaintiff, the Brady Campaign to Prevent Gun Violence United with the Million Mom March (the "Brady Campaign") is a non-profit organization dedicated to the reduction of gun violence. Members of the Brady Campaign include Joan Shirley and Mary Hunt, whose sons were killed with AK–47 semiautomatic assault weapons, the manufacture, transfer, and possession of which are restricted by the 1994 Act. See Decl. of Joan Shirley, ¶ 2; Decl. of Mary Hunt, ¶ 2; 18 U.S.C. § 921(a)(30)(A)(I) (defining "semiautomatic assault weapon", for the purposes of the statutory restrictions, to include "Poly Technologies Avtomat Kalashnikovs (all models)," which category includes the AK–47). Shirley and Hunt allege that they now live in constant fear of being subjected to further incidents of SAW-related violent crime. See Decl. of Shirley, ¶ 5; Decl. of Hunt, ¶ 6. Additionally, Brady Campaign members Shikha Hamilton and Joseph Lapp submitted statements attesting to their heightened fear of SAW-related violence, due in part to the fact that they

---

1. See 28 U.S.C. § 2401(a).

each live in neighborhoods where SAW-related violence occurs regularly. *See* Decl. of Shikha Hamilton, ¶ 2–4; Decl. of Joseph Lapp, ¶ 2–3.

On January 28, 2003, the Brady Campaign requested documents from the ATF related to interactions between the ATF and Bushmaster Firearms, Inc. ("Bushmaster") through the Freedom of Information Act. The ATF subsequently released documents to the plaintiff showing that Bushmaster wrote to the ATF on December 17, 1996, to explain that owners of SAWs exempted from the 1994 Act's restrictions under the grandfather clause were submitting weapons for repairs, including replacement of lower receivers, and to ask "what legal procedure" Bushmaster needed to follow in order to lawfully replace those receivers. Pl.Ex. 2, Letter from Daniel R. Vice, Staff Attorney at Brady Center to Prevent Gun Violence, to Bureau of Alcohol, Tobacco, Firearms and Explosives of Jan. 28, 2003.

In a response letter to Bushmaster that was also released to the Brady Campaign, the ATF directed Bushmaster to the ATF's Federal Firearms Regulations Reference Guide, which states that "defective" SAW frames or receivers must be replaced by the original manufacturer who must mark the replacement receiver with the same serial number that was on the original and destroy the defective original. However, if that procedure is impossible for some reason, the ATF policy allows the manufacturer to apply for a variance. If that variance is approved, the manufacturer may replace the receiver of a grandfathered SAW with a new receiver bearing a new serial number. On July 9, 2003, the Brady Campaign wrote to the ATF, argued that the policy violates the 1994 act, and asked that the policy be discontinued. The ATF replied that its actions were not

in violation of the 1994 Act. The Brady Campaign subsequently requested but did not receive other ATF documents related to ATF correspondence with additional SAW manufacturers.

The Brady Campaign then filed this action, requesting declaratory and injunctive relief and, pursuant to Sections 701–06 of the Administrative Procedure Act [2] and Federal Rule of Civil Procedure 65, a motion for a preliminary injunction to force the ATF to discontinue this policy immediately. The plaintiff's complaint and motion allege that the ATF policy, under which manufacturers of SAWs are permitted to provide new frames or receivers to owners of grandfathered SAWs, constitutes an authorization of the manufacture and transfer of new SAWs within the meaning of the 1994 Act's definition of "firearm." Because the statutory definition of "firearm" includes both · completed SAWs and frames or receivers alone, the Brady Campaign contends, the ATF policy in fact permits the manufacture and transfer of *new* firearms in violation of the 1994 Act. The government then filed the present motion to dismiss and for summary judgment.

## II. Standard

Federal Rule of Civil Procedure 12(b)(1) provides that a complaint may be dismissed for lack of subject-matter jurisdiction. Fed.R.Civ.P. 12(b)(1). On a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing that the Court has jurisdiction. *Grand Lodge of Fraternal Order of Police v. Ashcroft,* 185 F.Supp.2d 9, 13 (D.D.C.2001); *Pitney Bowes, Inc. v. United States Postal Serv.,* 27 F.Supp.2d 15, 18 (D.D.C.1998). A Court must accept all the non-movant's factual allegations as true

---

**2.** 5 U.S.C. §§ 701–06.

when reviewing a motion to dismiss under Rule 12(b)(1), *see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), but such allegations " 'will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a [Rule] 12(b)(6) motion for failure to state a claim." *Grand Lodge*, 185 F.Supp.2d at 13–14 (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (2d ed.1990)). A Court may also consider material beyond the allegations in the plaintiff's complaint when determining whether it has subject matter jurisdiction pursuant to Rule 12(b)(1). *See, e.g., EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25, 625 n. 3 (D.C.Cir.1997); *Herbert v. Nat'l Academy of Sciences*, 974 F.2d 192, 197 (D.C.Cir.1992).

### III. Discussion

■ Before deciding any other substantive issue that comes before it in a given case, a federal district court must determine whether the parties have presented a justiciable "case" or "controversy" within the meaning of Article III. The requirement that federal courts hear only justiciable disputes principally serves to limit the expansion of the judicial power in a manner consistent with constitutional structure. *See Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). "The constitutional power of federal courts cannot be defined, and indeed has no substance, without reference to the necessity 'to adjudge the legal rights of litigants in actual controversies.' " *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (quoting *Liverpool S.S. Co. v. Comm'n of Emigration*, 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899 (1885)).

■ One component of the general justiciability requirement is the doctrine of standing. Where the plaintiff is an organization suing on behalf of its members, such as the Brady Campaign here, an injury that would be sufficient to establish standing for an individual member similarly suffices to grant standing to the organization so long as: (1) the interests the organization is suing to protect are "germane to [the organization]'s purpose;" and (2) neither the cause of action nor the requested relief require the presence of individual members as parties to the suit. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 342–43, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) (quoting *Warth*, 422 U.S. at 511, 95 S.Ct. 2197).

■ To satisfy the *Hunt* test for organizational standing, then, the Brady Campaign must show that one or more of its members would have standing to sue individually. Generally, standing doctrine can be separated into two conceptually distinct sets of requirements. To establish constitutional standing—that is, to satisfy the "constitutional minimum" required by Article III in order to have a justiciable "case or controversy," plaintiffs in federal court must demonstrate that they have suffered an actual injury, or "injury in fact," from which their claims arise; and that the injury is both "fairly traceable" to some allegedly wrongful conduct by the defendant and likely to be redressed by a favorable judicial ruling. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).;*Valley Forge*, 454 U.S. at 472, 102 S.Ct. 752; *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Watt v. Energy Action Educational Foundation*, 454 U.S. 151, 161, 102 S.Ct. 205, 70 L.Ed.2d 309 (1981); *Branton v. FCC*, 993 F.2d 906, 908

(D.C.Cir.1993); *Fulani v. Brady,* 935 F.2d 1324, 1326 (D.C.Cir.1991).

In addition to these "constitutional" standing requirements, federal courts have noted and adhered to a set of prudential considerations that bear on the standing inquiry, including the requirement that the plaintiff assert his or her own legal rights and not those of a third party; as well as the requirement that Courts refrain from adjudicating "abstract questions of wide public significance" or so-called "generalized grievances" more appropriately addressed to the legislature even where the plaintiff has alleged an actual injury sufficient to satisfy constitutional standing requirements. *See Valley Forge,* 454 U.S. at 474–75, 102 S.Ct. 752; *Warth,* 422 U.S. at 499–500, 95 S.Ct. 2197; *Gladstone,* 441 U.S. at 100, 99 S.Ct. 1601; *Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 80, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1975). Finally, the federal courts have required that the plaintiff's complaint fall within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Assoc. of Data Processing Serv. Orgs. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Gladstone,* 441 U.S. at 100 n. 6, 99 S.Ct. 1601; *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 39 n. 19, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Because the Brady Campaign has filed suit under the Administrative Procedure Act for enforcement of the 1994 Act, it must demonstrate that the injuries it complains of fall within the "zone of interests to be protected" by the 1994 Act in addition to satisfying the other standing requirements.[3]

The party invoking federal jurisdiction has the burden of establishing that these standing requirements are satisfied. *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130 (citing *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)). In its motion, the government argues both that the Brady Campaign fails to demonstrate that it has suffered actual injury that is fairly traceable to the ATF policy and conduct it challenges and sensitive to redress by a favorable judicial decision; and that the complaint presents a mere "generalized grievance" insufficient to satisfy prudential standing requirements. It is important to note that the requirement that the plaintiff allege an "injury in fact" is analytically distinct from the requirement that the alleged injury be "traceable" to the defendant's conduct and "redressable" by favorable judicial action. This Court finds that while the Brady Campaign has alleged a sufficient injury in fact to support standing, it has failed to allege sufficient facts to demonstrate traceability and redressability.

*The Injury in Fact and Generalized Grievance Requirements*

Here, the inquiries into the plaintiff's injury and into whether that injury constitutes a generalized grievance are related. Generally, in order to demonstrate an injury sufficient to confer standing, a plaintiff must show that he or she has suffered "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130; *Allen v. Foundation v. Glickman,* 92 F.3d 1228, 1232 (D.C.Cir.1996). Here, then, the Brady Campaign must demonstrate that at least one of the injuries of which it complains satisfies both sets of standing requirements.

---

**3.** It should be noted, as the Brady Campaign alleges more than one type of injury in its petition, that the specific injury that satisfies constitutional standing requirements must also satisfy prudential standing requirements, and vice versa. *See Mountain States Legal*

*Wright,* 468 U.S. 737, 756, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *Warth,* 422 U.S. at 508, 95 S.Ct. 2197; *Sierra Club v. Morton,* 405 U.S. 727, 740–41, 741 n. 16, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). A particularized injury is one that affects the plaintiff in a "personal and individual way." *Lujan,* 504 U.S. at 560 n. 1, 112 S.Ct. 2130. Insofar as the Brady Campaign predicates its injury allegation in part upon past SAW-related violence, as in the cases of Joan Shirley and Mary Hunt, there can be no doubt that the plaintiff has alleged an injury that is both "actual" and "concrete and particularized" within the meaning of current standing doctrine.

Furthermore, federal courts seem increasingly willing to recognize an increased risk of *future* injury as sufficient to support standing so long as that risk satisfies the other standing requirements. For example, in *Mountain States Legal Foundation v. Glickman,* the Court of Appeals determined that plaintiffs challenging the government's election of one among several available logging plans for the Kootenai National Forest satisfied standing requirements with the allegation that the government's choice created an increased risk of wildfires, which would impair the plaintiffs' use of the Forest. *See Glickman,* 92 F.3d at 1234. *See also Lujan,* 504 U.S. at 562–63, 112 S.Ct. 2130 ("Of course, the desire to use or observe an animal species, even for purely aesthetic purposes, is undeniably a cognizable interest for the purpose of standing."); *Sierra Club v. Morton,* 405 U.S. 727, 734, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) ("The injury alleged by the Sierra Club will be incurred entirely by reason of the change in the uses to which Mineral king will be put, and the attendant changes in the aesthetics and ecology of the area.... We do not question that this type of harm may

amount to an 'injury in fact' sufficient to lay the basis for standing."); *Japan Whaling Assoc. v. American Cetacean Soc'y,* 478 U.S. 221, 231, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986) (finding standing where plaintiffs alleged that government action allowed for increased whaling which would interfere with whale watching) *Animal Legal Defense Fund v. Glickman,* 154 F.3d 426, 432 (D.C.Cir.1998).

█ The Brady Campaign submitted declarations from several of its members attesting to their fears of being subject to future SAW-related violence. These fears stem from past experiences in the cases of Shirley and Hunt, and from the regular occurrences of SAW-related violence in their neighborhoods in the cases of Hamilton and Lapp. The Brady Campaign argues in its complaint and motion that the ATF policy of allowing SAW manufacturers to supply owners of grandfathered SAWs with replacement frames or receivers will result in a net increase in the number of SAWs in existence, as the repaired SAWs will not break down and become unworkable as soon as they would have absent the ATF's policy. This net increase in the number of SAWs, the plaintiff contends, increases the risk that Brady Campaign members will be injured by SAWs in the future. Accepting the plaintiff's factual allegations as true, as the Court must on a Rule 12(b)(1) motion to dismiss, it seems clear that the Brady Campaign has alleged a sufficient actual injury. That is, specific members of the Brady Campaign live in neighborhoods where violent crimes involving SAWs occur at higher than average rates; and the challenged ATF policy increases the risk that criminals in those neighborhoods will be able to obtain SAWs, thus increasing the risk of violent SAW related crimes

involving Brady Campaign members.[4]

 The alternative conclusion is also particularly unsavory in light of the nature of the other cases in which "future risk" injury theories have been found sufficient to support standing. It cannot be that the risk of injury by a SAW is somehow less concrete than the risk that failure to assess the risks that a government-sponsored program poses to an endangered species in a foreign country. To make such a distinction would be to gut the requirement of a "concrete and particularized" injury, reducing standing doctrine to a set of distinctions without differences turning on each particular judge's view of whether or not a certain type of injury should qualify for judicial attention. Such result-oriented judging has no place in the administration of a doctrine intended to maintain the constitutional separation of powers between the judiciary and the political branches of the federal government. To the contrary, standing, because of its importance in policing the limits of judicial power, should be evaluated on the basis of clear principles and standards. Thus, this Court will not give credence to the contention that the Brady Campaign has failed to allege a sufficiently "concrete and particularized" actual injury.[5]

Neither does the plaintiff's complaint present a "generalized grievance" that is nonjusticiable on prudential grounds. To be sure, all individuals have an interest in not being subjected to injury by criminals with SAWs, but the Brady Campaign has alleged sufficient facts to demonstrate that some of its members have particular, personal reasons to fear that they may be particularly susceptible to SAW-related violent crime. Finally, there can be no doubt that the Brady Campaign falls within the "zone of interests to be protected" by the 1994 Act. The Supreme Court explained that "for a plaintiff's interests to be arguably within the 'zone of interests' protected by a statute, there does not have to be an 'indication of congressional purpose to benefit the plaintiff.' " *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 492, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998). That is, standing should only be precluded where the plaintiff's interests are ... "marginally related to or inconsistent with the purposes implicit in the statute.' " *Id.* at 491, 118 S.Ct. 927 (quoting *Clarke v. Securities Indus. Assoc.*, 479 U.S. 388, 399, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987)). Here the Brady Campaign, a public interest group committed to reducing gun violence, clearly cannot be said to have interests only "margin-

4. In its motion for preliminary injunction, the Brady Campaign argues that one of its members, Dr. Matthew Schwartz, has also suffered "injury in fact" sufficient to support standing in that he is required to spend a significantly larger amount of time and resources rehabilitating victims of multiple gunshot wounds inflicted by SAWs than he would on single-gunshot-wound victims. This extra expenditure of time and resources, the plaintiff argues, "makes it more difficult for Dr. Schwartz to do his job of reducing suffering and long term disability." Pl. Mot. for Prelim. Inj. at 25. The Court finds that the plaintiff has not alleged sufficient facts to demonstrate that Dr. Schwartz's injury is, in any sense, an invasion of a legally protected interest. Presumably, Dr. Schwartz's principal occupation is to treat the ill and injured, thus, it seems nonsensical to argue that he is injured by actions that increase the magnitude of his patients' injuries.

5. Furthermore, it is irrelevant to standing analysis whether the challenged ATF policy is responsible for making available 1, 500, or 500,000 additional SAWs. As this Court has previously noted, an inquiry into the size or magnitude of the plaintiff's alleged injury "has no place in the standing analysis, but is rather an issue going to the merits." *Edmonds Inst. v. Babbitt*, 42 F.Supp.2d 1, 11 (D.D.C.1999).

ally related to" or "inconsistent with the purposes implicit in" a federal gun-control statute.

Thus the plaintiff satisfies the "actual injury" and prudential standing requirements. It is to the remaining constitutional standing requirements, namely the injury's traceability to the challenged conduct of the defendants and redressability by favorable court action, that the Court now turns.

*Traceability and Redressability*

 Whether an alleged injury is "fairly traceable" to the defendants' challenged conduct, a question of causation, may be determined by inquiring whether there is a "substantial likelihood" that the plaintiff's injury would be redressed by favorable judicial action. *See Simon,* 426 U.S. at 41, 96 S.Ct. 1917; *Duke Power,* 438 U.S. at 74, 75 n. 20, 98 S.Ct. 2620. In contrast, then, to the actual injury requirement, where magnitude or severity is irrelevant to standing, a discussion of the attenuation of the causal link between the injury and the defendants' challenged conduct is central to a determination concerning the traceability/redressability requirement. That is, the more attenuated the causal link, the less substantial the likelihood that a judicial ruling against the defendants will in fact redress the plaintiff's injury.

 Of course, if the Brady Campaign's factual allegations are taken as true, then, to a degree, the ATF policy must contribute to the increased risk of SAW violence precipitated by the net increase in the number of available SAWs. However, SAW manufacturers, owners of grandfathered SAWs, and the criminals who commit acts of violence with SAWs contribute, in an obviously more substantial degree, to that increase in risk. When the alleged injury stems not directly from governmental action, but rather from "the

government's allegedly unlawful regulation (or lack of regulation) of someone else," more exacting scrutiny is called for with respect to the traceability and redressability requirements. *Lujan,* 504 U.S. at 562, 112 S.Ct. 2130; *Freedom Republicans, Inc. v. Federal Election Comm'n,* 13 F.3d 412, 416 (D.C.Cir.1994). *See also Simon,* 426 U.S. at 44–45, 96 S.Ct. 1917 (indirectness of injury makes it much more difficult for plaintiff to satisfy traceability and redressability requirements).

The Supreme Court explained that where "causation and redressability ... hinge on the response of the regulated (or regulable) third party to the government action or inaction," the existence of traceability and redressability depend on " 'the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume to either control or predict.' " *Lujan,* 504 U.S. at 562, 112 S.Ct. 2130 (quoting *ASARCO, Inc. v. Kadish,* 490 U.S. 605, 615, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989) (Opinion of Kennedy, J.)).

Here, because the conduct of SAW manufacturers in seeking variances to permit repair of grandfathered SAWs with new frames or receivers; as well as the conduct of individuals who commit violent crimes using SAWs; are quite obviously the primary causes of the injuries the Brady Campaign complains of, "it becomes the burden of the plaintiff to adduce facts showing that [third party] choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Id.* For example, the Brady Campaign would need to adduce facts showing that SAW manufacturers would not seek some alternative means to repair grandfathered SAWs or take other actions that would continue to increase the number of available SAWs in the absence of

the ATF policy. Or, the plaintiff could attempt to show that discontinuation of ATF authorization for these kinds of repairs would create a disincentive for owners of grandfathered SAWs to seek to have their weapons repaired. But absent such factual allegations to demonstrate how the relevant third parties are likely to conduct themselves if the requested judicial relief were to be granted, the Brady Campaign fails to satisfy the heavy burden imposed by the traceability and redressability prongs of the standing inquiry where third party action is a cause of injury.

Because there are insufficient factual allegations upon which to base a finding that favorable judicial action would in any real way remedy the injuries the Brady Campaign complains of, the traceability and redressability requirements of Article III standing doctrine are not satisfied in this case.

### IV. Conclusion

For the reasons set forth above, the government's motion to dismiss and for summary judgment on the basis of lack of subject-matter jurisdiction shall be GRANTED and the plaintiff's complaint shall be DISMISSED and its motion for preliminary injunction DENIED as moot.

A separate order shall issue this date.