**Lawrence J. OGDEN, Plaintiff,**

v.

**ASSOCIATION OF the UNITED STATES ARMY, a corporation, Defendant.**

**Civ. A. No. 1735–59.**

United States District Court
District of Columbia.

Oct. 14, 1959.

---

27.  Note 4, supra.

28.  Note 22, supra.

Harry E. Taylor, Jr., Washington, D. C., for plaintiff.

Frederick B. Wiener, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

The question presented for decision in this case is whether from the standpoint of the statute of limitations in an action for libel every sale or delivery of a copy of a book, periodical, or newspaper containing an alleged defamatory statement, creates a separate cause of action; or whether only one cause of action arises which accrues at the time of the first publication of one or more copies of the offending material. To formulate this question in another form, should the so-called modern "single publication rule" be the law of the District of Columbia? The question is one of novel impression in this jurisdiction.

The defendant pursuant to a contract with the United States published a book in 1954 entitled, "Combat Actions in Korea". This work contained some adverse criticisms on the handling of a platoon which it was said the plaintiff commanded during one of the engagements in Korea. It is charged by the plaintiff that these aspersions are defamatory and this action for libel was brought in respect to them.[1]

The defendant moved for summary judgment on the ground, among others, that the action is barred by the one-year statute of limitations governing actions for libel in the District of Columbia, D. C.Code, Title 12, Section 201. The book was published in November 1955, whereas this action was brought on June 25, 1959. The action is obviously barred by the statute of limitations unless subsequent individual sales of the publication within the one-year period prior to the filing of suit created separate and independent causes of action. In view of the importance of this question and its novelty in this jurisdiction, the Court felt that it was incumbent upon it to make a comprehensive study of the rules of law on this point and their present status in various Anglo-American jurisdictions.

The common law was originally to the effect that every sale or delivery of a copy of libelous matter was a new publication and that, therefore, a new cause of action accrued on each occasion. This basic principle is formulated in the classic treatise of Odgers on Libel and Slander, p. 160, as follows:

> "So again every sale or delivery of a written or printed copy of a libel is a fresh publication; and every person who sells or gives away a written or printed copy of a libel may be made a defendant, unless, indeed, he can satisfy the jury that he was ignorant of the contents."

In The King v. Carlisle, 1 Chitty 451, 18 Eng.Common Law Reports 248, decided in 1819, it was said that "every copy of the same libel sold by the defendant was a separate publication".

A leading English case on the subject is The Duke of Brunswick v. Harmer, 14 Q.B. 185, 117 Eng.Rep. 75, decided in 1849. It involved an issue of a newspaper published in 1830. A single copy was sold by the defendant seventeen years later and a suit for libel was predicated on this sale as a publication. The

---

1. It should be said in justice to the plaintiff and in order to make the account complete, that on September 25, 1956, Major General John H. Stokes, Jr., Chief of Military History, wrote a letter to the plaintiff in which he stated that the author of the book was incorrect in naming the plaintiff as the commander of the platoon in question.

plea of the statute of limitations was overruled on the theory that each sale or delivery of a copy of the offending material gave rise to a new and separate cause of action.

This is still the law of England, Gatley, Libel and Slander, Fourth Edition by Richard O'Sullivan, Q.C., 1953, p. 383. An examination of the Reports of the British Dominions fails to disclose any departure from that rule in any of them.

Restatement of the Law of Torts, Section 578, accepts this formulation of the law without discussion.

The conditions in respect to dissemination of printed publications prior to the middle of the Nineteenth Century were vastly different from those prevailing in our times. Modern typesetting machines and rapid whirling steam printing presses have made it possible to reproduce a number of copies of a single publication far beyond any number within the realm of contemplation a century ago. Today newspapers can achieve a circulation of a million copies daily. Periodicals are diffused in large quantities. Books attain a distribution far beyond that likely a hundred years ago. Mass production has entered the printing and publishing field. To say that every sale or delivery of a copy of a publication if it contains defamatory matter, gives rise to a new cause of action may seem logical from a purely technical standpoint, but to adhere to this doctrine would be to sacrifice reality to strict technical logic. Under modern conditions the original common-law rule would give rise to an unnecessary multiplicity of suits and would practically destroy the statute of limitations as a statute of repose in actions for libel. There is no doubt, to be sure, that the number of copies of the offending publication that have been supplied to the public is a factor to be considered in determining the amount of damages to be awarded. In order to protect the plaintiff in this respect, however, it is not necessary to hold that every sale and delivery of an additional copy is a new

publication and gives rise to a new cause of action.

One of the early departures from the common-law rule occurred in Missouri in 1908. In Julian v. Kansas City Star Co., 209 Mo. 35, 107 S.W. 496, the Court held that the one entire issue of a newspaper, though it may have consisted of many thousand copies, gave rise to but one cause of action, and that there was but one publication. While this case did not involve the statute of limitations but a question of venue, nevertheless, it adopts the single publication rule, namely, that all of the copies of a printed publication constitute a single publication occurring on first delivery or distribution to the public.

The same principle was adopted in Alabama in 1921 also in connection with a question of venue, Age-Herald Pub. Co. v. Huddleston, 207 Ala. 40, 45, 92 So. 193, 37 A.L.R. 898.

One of the earliest reported cases in which the single publication rule was applied in respect to the statute of limitations, is a New York decision. Wolfson v. Syracuse Newspapers, Inc., 1938, 254 App.Div. 211, 4 N.Y.S.2d 640, affirmed 1939, 279 N.Y. 716, 18 N.E.2d 676. It held that in connection with the publication of a defamatory article in a newspaper, there is but one publication, which occurs at the time of publication of the original issue; that the cause of action accrues at that time; and that the statute of limitations begins to run on that date.

In Gregoire v. G. P. Putnam's Sons, 1948, 298 N.Y. 119, 81 N.E.2d 45, a few years later, it was held that the same doctrine, i. e., the "single publication" rule should also apply to books and was not limited to newspapers or magazines. Obviously there is no distinction in principle between the two. There is only a difference in degree. The principle is very pointedly summarized in the majority opinion in the following manner (298 N.Y. at page 126, 81 N.E.2d at page 49):

"Although it may not be said that the publication and dissemination of

books has reached that degree of mass production and widespread distribution now prevalent in fields invaded by newspapers and periodicals, it is our view that the publication of a libelous book, involving styling, printing, binding and those other acts which enable a publisher on a given date to release to the public thousands of copies of a single printing or impression, affords the one libeled a legal basis for only one cause of action which arises when the finished product is released by the publisher for sale in accordance with trade practice."

Mississippi in 1943 adopted the single publication rule in Forman v. Mississippi Publishers Corp., 195 Miss. 90, 107, 14 So.2d 344, 347, 148 A.L.R. 469. The Court pointed out that the contention that a new cause of action arises with each reader of a defamatory publication leads to many impractical conclusions, "not the least untenable of which is that * * * a plaintiff could enlarge his declaration so as to include as many counts as there were subscribers". The Court held that there is no doubt that the statute of limitations ran from the date of the first publication.

In Polchlopek v. American News Co., D.C., 73 F.Supp. 309, and McGlue v. Weekly Publications, Inc., D.C., 63 F. Supp. 744, decided under the law of Massachusetts, the Court held that neither continued sale of copies of the same publication, nor the sale of additional copies by way of replacement would foreclose the operation of the period of limitations from the time of the original publication. The highest court of Massachusetts does not appear to have spoken on the subject as yet, and these two decisions of the United States District Court for the District of Massachusetts may be accepted as expressions of the Massachusetts law.

Illinois adhered to the single publication doctrine in 1948 in the case of Winrod v. Time, Inc., 334 Ill.App. 59, 78 N.E.2d 708. It adopted the rule of law that one issue of a newspaper or magazine, although it consists of thousands of copies widely distributed, gives rise to one cause of action, there being but one publication, and the statute of limitations runs from the date of such publication.

In 1953 in Dale System, Inc. v. Time, Inc., D.C.D.Conn., 116 F.Supp. 527, Judge Hincks expressed the view that the courts of Connecticut would follow the lead of the New York decision in Gregoire v. G. P. Putnam's Sons, 298 N.Y. 119, 81 N.E.2d 45, and would accept the single publication rule. On this point he wrote as follows (116 F. Supp. at page 529):

"There has long been an affinity between the legal philosophies of the courts of New York and of Connecticut, and also between the *mores* of the citizens of those neighboring states, which has developed an awareness of the desirability of uniformity in the laws which govern the transactions and relations between the citizens of one of these States with citizens of the other. Although the Connecticut courts as yet have no occasion to discuss and pass upon the 'single publication' rule which has been adopted in New York as recently restated in Gregoire v. G. P. Putnam's Sons, 298 N.Y. 119, 81 N.E.2d 45, 50, the foregoing considerations, coupled with the general policy of the Connecticut courts to shape the law of the State to harmonize with the realities of contemporary life, convince me that a Connecticut court if confronted with this case would adopt the 'single publication rule'."

Judge Hincks also held in Fouts v. Fawcett Publications, D.C., 116 F.Supp. 535, that Kansas would follow the same rule; and in Hazlitt v. Fawcett Publications, D.C., 116 F.Supp. 538, that this rule was likewise the law of Oklahoma.

The Commissioners on Uniform State Laws, in 1952, proposed the so-called "Uniform Single Publication Act", the principal provision of which reads as follows (U.L.A. 9C, p. 173):

"No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one edition of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture * * *."

This Act has been adopted by the Legislatures of Arizona (1953) [2]; Idaho (1953) [3]; North Dakota (1953) [4]; Pennsylvania (1953) [5]; California (1955) [6]; and New Mexico (1955) [7].

There are indeed a few States that expressly adhere to the original English rule in cases that were decided a great many years ago, Staub v. Van Benthuysen, 36 La.Ann. 467, 469; Street v. Johnson, 80 Wis. 455, 458, 50 N.W. 395, 14 L.R.A. 203. They are a small minority. As is to be expected in some States there are no decisions whatever on this question.

From the foregoing discussion the conclusion is inescapable that the modern American law of libel has adopted the so-called "single publication" rule; and, therefore, this principle must be deemed a part of the common law of the District of Columbia. In other words, it is the prevailing American doctrine that the publication of a book, periodical, or newspaper containing defamatory matter gives rise to but one cause of action for libel, which accrues at the time of the original publication, and that the statute of limitations runs from that date. It is no longer the law that every sale or delivery of a copy of the publication creates a new cause of action.

The American rule is supported not only by the great weight of authority, but is also far more suited to contemporary life. To permit a separate suit to be brought in regard to the sale or delivery of every single copy of a modern publication would be inconceivable and intolerable.

In view of these considerations, the plaintiff's cause of action must be deemed to have accrued on the date of the original publication of the book in question and, therefore, is barred by the statute of limitations.

The defendant adduced as an additional ground in support of his motion for summary judgment, the contention that the material of which the plaintiff complains was issued by the defendant under a contract with the Government, that the book was an official publication of the United States and, therefore, was absolutely privileged. In view of the disposition made of the issue of the statute of limitations, it is not necessary to express any opinion or make any ruling on this point. It might be said, however, that the Court would not be inclined to extend the doctrine of absolute privilege beyond its scope as defined by the Supreme Court, since absolute privilege whittles away one of the most precious private rights protected by law, namely, the right to reputation.

As a third and last ground in support of the motion, it is urged that the accused material is not capable or susceptible of the defamatory construction sought to be placed on it. This too is a question that need not be determined, since the Court has upheld the plea of the statute of limitations.

The defendant's motion for summary judgment is granted.

2. A.R.S. § 12-651.

3. Idaho Code Ann. §§ 6-701 to 6-705.

4. N.D.Revised Code, 14-0210 (1953 Supp.)

5. Pa.Stat.Ann. tit. 12, §§ 2090.1 to 2090.5.

6. West's Ann.Cal.Civ.Code, §§ 3425.1 to 3425.5.

7. 1953 Statutes, §§ 40-27-30 to 40-27-35.