**Kevin TREMEL, Plaintiff,**

v.

**BIERMAN & GEESING, L.L.C.,
et al., Defendants.**

**No. CIV.A. 02–0182(RBW).**

United States District Court,
District of Columbia.

Feb. 27, 2003.

Kevin Tremel, Forestville, MD, Pro se.

Ralph J. DiPietro, Esquire, Bierman, Gessing & Ward, LLC, Bethesda, MD, for Defendant.

William Alfred Dyess, Esquire, Federal Deposit Insurance Corporation, Washington, DC, for Non Party.

## MEMORANDUM OPINION

WALTON, District Judge.

This matter comes before the Court upon defendants' motions to dismiss the plaintiff's complaint on the following four grounds: (1) the doctrine of res judicata; (2) lack of jurisdiction; (3) abstention; and (4) failure to state a claim upon which relief can be granted. The plaintiff's complaint seeks damages arising from the decision of a Maryland state trial court that ratified the foreclosure sale of his residence, which he alleges: (1) violated his constitutional rights to due process, under both the United States Constitution and the Constitution of Maryland,[1] because he failed to receive both notice of the foreclosure sale of his property and a fair hearing in the Circuit Court for Calvert County, Maryland; and (2) was the product of the trial judge engaging in judicial and criminal misconduct during the proceedings that had been initiated to ratify the foreclosure sale.[2] Complaint for Direct Consequential and Punitive Damages ("Compl.") at 13–14. Upon consideration of the parties' submissions and for the reasons set forth below, the Court must dismiss the plaintiff's case because the Court lacks jurisdiction to review final judicial decisions of state courts.[3]

## I. Factual Background

### (1) Facts Related to the Foreclosure Sale and the Maryland Circuit Court's Review of the Foreclosure Sale

On August 5, 1998, the plaintiff used his real property located at 2095 Tobacco Road, Chesapeake Beach, Maryland, as collateral, by executing a Deed of Trust, to secure a loan. *See Tremel v. Bierman,* No. 295, at 3 (Md.Ct.Spec.App. Sept. 2001). The Deed of Trust was assigned to LaSalle National Bank, and named Howard N. Bierman, Jacob Geesing, and Kenya D. McRae as the substitute trustees. *Id.* Superior Savings Bank, was initially the "servicer of the indebtedness" secured by the Deed of Trust, but was later replaced by the Federal Deposit Insurance Corporation ("FDIC") after the Superior Bank went out of business. *Id.* After the plaintiff's failure to make several mortgage payments, the substitute trustees initiated a foreclosure action and a foreclosure sale

---

1. Specifically, the plaintiff alleges that his due process rights, under the Fifth and Fourteenth Amendments of the United States Constitution and Article 24 of the Constitution of Maryland, were violated.

2. The plaintiff makes numerous allegations of judicial and criminal misconduct against the trial judge, including: (1) the ratification of the illegal foreclosure sale of the plaintiff's home; (2) violation of his oath of office; (3) judicial neglect; (4) bias and discriminatory conduct; (5) commission of felonies; (6) abuse of his power; (7) illegal use of the

Court; and (8) acts of treason. Compl. at 13–14. The Court notes, however, that the plaintiff has not brought any claims directly against the trial judge.

3. Because of the plaintiff's status as a *pro se* litigant, this Court issued an Order on July 12, 2002, as required by *Fox v. Strickland,* 837 F.2d 507 (D.C.Cir.1988), wherein the plaintiff was notified of the potential consequences of failing to fully and completely respond to the defendants' dismissal motions. The plaintiff filed his response to this Order on August 12, 2002.

was scheduled for December 5, 2000. *Id.* Notice of the December 5, 2000 foreclosure sale was mailed to plaintiff on November 27, 2000, by first class and certified mail. *Id.* At the foreclosure sale, the subject property was sold, and the substitute trustees filed a Report of Sale and an Affidavit of Compliance, as required by Maryland Rule 14–206(b), in the Circuit Court for Calvert County on the same day as the sale. *Id.* On January 30, 2001, the Clerk of the Circuit Court for Calvert County published a Notice stating that the sale of the property "would be ratified and confirmed unless cause to the contrary was shown on or before March 1, 2001." *Id.* at 3–4. The plaintiff subsequently filed four timely motions contesting the foreclosure sale during the month of February 2001.[4] *Id.* at 4. On March 29, 2001, the Circuit Court for Calvert County denied all four motions, and entered an order ratifying and confirming the sale of the plaintiff's property. *Id.* at 5.

### (2) *The Maryland State Courts' Appellate Review of the Foreclosure Sale*

On April 16, 2001, the plaintiff filed a timely notice of appeal with the Court of Special Appeals of Maryland. *Id.* at 5. While the plaintiff presented nine separate questions for review, the Court "reorganized and rephrased [these issues] into . . . two questions: I. Did the circuit court err when it denied Appellant's exceptions to the foreclosure sale? [and] II. Did the circuit court err when it found that Appellant was not denied due process because he received notice by mail of the foreclosure sale?" *Id.* at 1–2. On April 12, 2002, the Court of Special Appeals denied each of the plaintiff's federal and state claims, and affirmed the judgment of the circuit court. *Id.*

First, with regard to the circuit court's denial of the plaintiff's exceptions to the foreclosure sale, the Court of Special Appeals found that the plaintiff's argument that he was improperly served with notice of the foreclosure sale lacked any merit because he "was given proper notice, attended the sale, and was given the opportunity to be heard by the Circuit Court."[5] *Id.* at 8. Second, the Court of Special Appeals found that the record was devoid of any evidence which indicated that the foreclosure sale was illegal based upon the inadequacy of the sale price, and concluded that while the property sold for less than fair market value, it was "well within the range of reasonableness and [did] not shock the conscience of this Court." *Id.* at 11. Finally, the Court of Special Appeals held that there was nothing in the record that would support the plaintiff's claims of judicial or criminal misconduct. *Id.* at 11–12.

---

**4.** The four motions were titled as follows: (1) "Due to No Notification on all Paperwork Relating to my case No. 04–C–99–1013 Request Time Frame to File for Stay of Execution of Case No. 04–C–99–1013"; (2) "Notice of Urgency Motion for Demand and Trial by Jury on my Case No. 04–C–99–1013"; (3) "Notice of Urgency Motion for Stay of Execution on my Case No. 04–C–99–1013"; and (4) "Sworn Statements and Exceptions to Foreclosure Sale." *Id.* at 4.

**5.** The Court of Special Appeals noted that "[t]he substitute trustee . . . recalled the plaintiff's presence[ ]" at the foreclosure sale and

that the record included "the Advertisement of Sale, the Affidavit of Compliance, and the Return Receipt executed by [the plaintiff]." *Id.* at 4 n. 5. Thus, the court concluded that "[i]t is clear that [plaintiff] had notice, and that all notice provisions found in Md.Code Ann, Real Prop. § 7–105 (1988, 1996 Repl. Vol., 2001 Cum.Supp.), were followed." *Id.* The plaintiff has since conceded that he had notice of the December 5, 2000 foreclosure hearing. *See* Plaintiff's Response to Judge Reggie B. Walton's Order for a More Definite Statement and Specific Reasons Why Defendants are seeking Relief in Their Motion ("Pl.'s Resp.") at 1–2.

Following the Court of Special Appeals' ruling, the plaintiff filed a petition for a writ of certiorari with the Court of Appeals of Maryland, the highest court in the State of Maryland. The petition was subsequently denied on July 18, 2002. *See Tremel v. Bierman*, 802 A.2d 439 (Md.2002) (cited in Table).

### (3) *The Plaintiff's Complaint Filed in the Case Before this Court*

On February 1, 2002, while the state court proceeding was pending, the plaintiff filed the complaint that is currently before this Court. In his complaint, the plaintiff simply asserts without explanation that his due process rights have been violated, details the damages and non-monetary relief he is seeking, and attaches the brief he filed with the Maryland Court of Special Appeals to serve presumably as the factual and legal basis for the allegations in his complaint. *See* Compl. and attached brief.

### II. *Standard of Review: Rule 12(b)(1)*

Federal Rule of Civil Procedure 12(b)(1) requires that the plaintiff bear the burden of establishing by a preponderance of the evidence that the court has jurisdiction to entertain his claims. Fed.R.Civ.P. 12(b)(1); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F.Supp.2d 9, 13 (D.D.C.2001); *Pitney Bowes, Inc. v. United States Postal Serv.*, 27 F.Supp.2d 15, 18 (D.D.C.1998); *Darden v. United States*, 18 Cl.Ct. 855, 859 (1989). While the Court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), because the plaintiff has the burden of establishing the Court's jurisdiction, the " 'plaintiff's factual allegations in the complaint ... will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for

failure to state a claim." *Grand Lodge of Fraternal Order of Police*, 185 F.Supp.2d at 13–14 (citation omitted). In addition, the Court notes that in deciding a Rule 12(b)(1) motion, it is well established in this Circuit that a court is not limited to the allegations in the complaint, but may consider material outside of the complaint in an effort to determine whether the court has jurisdiction in the case. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 n. 3 (D.C.Cir.1997); *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C.Cir.1992); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C.Cir.1987); *Hohri v. United States*, 782 F.2d 227, 241 (D.C.Cir.1986); *Grand Lodge of Fraternal Order of Police*, 185 F.Supp.2d at 14. Finally, because the plaintiff is proceeding *pro se*, the Court must hold the complaint "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

### III. *Legal Analysis*

Two separate, but related, legal doctrines that prohibit federal courts from considering claims that have already been reduced to a final judgment in a state court are potentially implicated here: the Supreme Court's *Rooker–Feldman* abstention doctrine and the doctrine of *res judicata*. One of the most significant differences between the two doctrines is that the *Rooker–Feldman* abstention doctrine requires an assessment of whether the district court has subject matter jurisdiction in a particular case, while *res judicata* is "an affirmative defense and is dependent upon the Full Faith and Credit Statute, 28 U.S.C. § 1738, which requires federal courts to give a state court judgment the same preclusive effect it would have in state court." *A.D. Brokaw v. Weaver*, 305 F.3d 660, 664 n. 4 (7th Cir.2002) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 560 (7th Cir.1999)). Recognizing that the distinction between the two doctrines

is a "fine one[,]" the Seventh Circuit has noted that "[g]enerally speaking, if the complaint attacks the state court judgment, then *Rooker–Feldman* bars subject matter jurisdiction, but if the plaintiff attempts to relitigate the case and thus bypass the state court judgment, the federal court has subject matter jurisdiction, but *res judicata* bars the suit." *Id.* (citing *Nesses v. Shepard,* 68 F.3d 1003, 1004 (7th Cir.1995)). Thus, because a court is obligated at the outset in every case to determine whether it has the jurisdiction to consider the plaintiff's claims, *see Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (a court's jurisdiction to entertain the plaintiff's complaint must be established as a threshold matter), this Court must first examine whether the jurisdictional proscription of the *Rooker–Feldman* abstention doctrine applies to this case.

 Under the *Rooker–Feldman* doctrine, which derives its name from two Supreme Court cases, *Rooker v. Fidelity Trust Company,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy,* 512 U.S. 997, 1005–1006, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994) (citing *Feldman,* 460 U.S. at 482, 103 S.Ct. 1303; *Rooker,* 263 U.S. at 416, 44 S.Ct. 149); *see also Gray v. Poole,* 275 F.3d 1113, 1119 (D.C.Cir.2002) (*Rooker–Feldman* doctrine essentially prohibits lower federal courts from "hearing cases that amount to the functional equivalent of an appeal from a state court.") (citing *Feldman,* 460 U.S. at 483–86, 103 S.Ct. 1303; *Rooker,* 263 U.S. at 416, 44 S.Ct. 149). As held by the Supreme Court, federal district courts do not have the "authority to review final judgments of a state court in judicial proceedings," *Feldman,* 460 U.S. at 482, 103 S.Ct. 1303, or to decide federal constitutional claims that are so "inextricably intertwined with the state court decision that the district court is in essence being called upon to review the state-court decision." *Stanton v. Dist. of Columbia Court of Appeals,* 127 F.3d 72, 75 (D.C.Cir.1997) (quoting *Feldman,* 460 U.S. at 483–84, 103 S.Ct. 1303). The *Rooker–Feldman* doctrine, while rooted in the principle of state sovereignty, emanates from 28 U.S.C. § 1257 (2000), which provides that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the [United States] Supreme Court ..."[6] The ratio-

---

**6.** The Court notes that this case was originally filed after an appeal had been pending before the Court of Special Appeals of Maryland, Maryland's intermediary appellate court, for approximately ten months. While this Court would abstain from exercising jurisdiction if this matter was still pending in the state court system pursuant to the *Younger* abstention doctrine, *see Younger v. Harris,* 401 U.S. 37, 43–54, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), because the State's highest Court has now denied the plaintiff relief, the Court, for the reasons set forth herein, is barred from exercising jurisdiction under the *Rooker*–Feldman doctrine. While the Supreme Court has not had the occasion to address whether the *Rooker*–Feldman doctrine applies to judgments of intermediate state courts, this Court notes that several other Circuits have applied this doctrine to bar jurisdiction even when the state court judgment at issue was not rendered by the state's highest court. *See Kenmen Eng'g v. City of Union,* 314 F.3d 468, 473 (10th Cir.2002) (applying *Rooker*–Feldman doctrine to the decision of an intermediate state-court judgment); *Worldwide Church of God v. McNair,* 805 F.2d 888, 893 n. 3 (9th Cir.1986) ("[T]he *Feldman* doctrine should apply to state judgments even though state court appeals are not final."); *Hale v. Harney,*

nale for the adoption of the *Rooker–Feldman* abstention doctrine was addressed by the Supreme Court in *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970). Justice Black, speaking for the majority, explained:

> When this Nation was established by the Constitution, each State surrendered only a part of its sovereign power to the national government. But those powers that were not surrendered were retained by the States and unless a State was restrained by 'the supreme Law of the Land' as expressed in the Constitution, law, or treaties of the United States, it was free to exercise those retained powers as it saw fit. One of the reserved powers was the maintenance of state judicial systems for the decision of legal controversies. Many of the Framers of the Constitution felt that separate federal courts were unnecessary and that the state courts could be entrusted to protect both state and federal rights. Others felt that a complete system of federal courts to take care of federal legal problems should be provided for in the Constitution itself. This dispute resulted in compromise. One 'supreme court' was created by the Constitution, and Congress was given the power to create other federal courts. In the first Congress this power was exercised and a system of federal trial and appellate courts with limited jurisdiction was created by the Judiciary Act of 1789, 1 Stat. 73.
>
> While the lower federal courts were given certain powers in the 1789 Act, they were not given any power to review directly cases from state courts, and they have not been given such powers since that time. Only the Supreme Court was authorized to review on direct appeal the decisions of state courts. Thus from the beginning we have had in this country two essentially separate legal systems. Each system proceeds independently of the other with ultimate review [by the Supreme Court] of the federal questions raised in either system. Understandably this dual court system was bound to lead to conflicts and frictions. Litigants who foresaw the possibility of more favorable treatment in one or the other system would predictably hasten to invoke the powers of whichever court it was believed would present the best chance of success. Obviously this dual system could not function if state and federal courts were free to fight each other for control of a particular case. Thus, in order to make the dual system work and to prevent needless friction between state and federal courts, it was necessary to work out lines of demarcation between the two systems. Some of these limits were spelled out in the 1789 Act. Others have been added by later statutes as well as judicial decisions.

*Id.* at 285–86, 90 S.Ct. 1739 (internal citation and quotation omitted).

■ Examining the nature of the plaintiff's claims being advanced in this case, it is readily apparent that this Court lacks jurisdiction to entertain these claims by the *Rooker–Feldman* abstention doctrine.[7] What the plaintiff has done, in effect, is to

---

786 F.2d 688, 691 (5th Cir.1986) ("We hold no warrant to review even final judgments of state courts, let alone those which may never take final effect because they remain subject to revision in the state appellate system.").

**7.** Because this Court is barred from exercising jurisdiction to entertain the plaintiff's case

pursuant to the *Rooker–Feldman* doctrine, as the plaintiff is attacking the state court judgment, the Court finds it unnecessary to analyze whether *res judicata* is also a bar to this Court considering the plaintiff's claims. In any event, the Court seriously questions whether *res judicata* would not also be a bar to this action.

seek the equivalent of appellate review by this Court of a state court judgment by claiming that he has suffered injuries as a direct result of the foreclosure proceedings. This, he cannot do, as he is seeking to have this co-equal federal counterpart of the Circuit Court for Calvert County review the decision of that court based on arguments that have been considered and rejected by both the Court of Special Appeals of Maryland and the Court of Appeals of Maryland. The reality of what the plaintiff is trying to do is evident from an examination of the complaint the plaintiff filed in this case, wherein he simply sets forth the relief he is seeking,[8] and attaches to the complaint the brief he filed with Maryland's Court of Special Appeals, which presumably is intended to serve as the factual and legal predicate for his substantive claims in this case.[9] While application of the *Rooker–Feldman* doctrine is complicated in many cases, as a federal court is often left to determine whether the claims before it are "inextricably intertwined" with the decision of a state court, see *A.D. Brokaw*, 305 F.3d at 664–65 (noting that "[d]iscerning which claims are and which claims are not 'inextricably intertwined' with a state judgment is a difficult process ... [because] the pivotal inquiry in applying the doctrine is whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim."), the circumstances of this case result in a straight-forward application of the doctrine because the claims being raised in this Court are based on the same arguments advanced by the plaintiff in his brief that was submitted to Maryland's Court of Special Appeals. The brief filed with the Court of Special Appeals and the complaint filed in this Court, challenging the Calvert County Circuit Court judgment, both assert that the plaintiff's due process rights were violated because he allegedly failed to receive both notice of the foreclosure sale for his property and a fair hearing in the circuit court. Further, the plaintiff contends in both submissions that the trial judge engaged in judicial and criminal misconduct during the foreclosure sale hearing. Because all of the plaintiff's challenges to the foreclosure sale were rejected by not only the Court of Special Appeals, but also by Maryland's highest appellate court, the plaintiff's only recourse was to seek review by the United States Supreme Court of the decision of the Maryland Court of Appeals affirming the lower court's decision.[10] See 28 U.S.C.

---

**8.** Specifically, the plaintiff seeks possession of his former residence, Compl. at 2; $7,500,000.00 for "direct damages caused by the illegal foreclosure of [his] home ... [and] for repeatedly violating [his] guaranteed Constitutional, Human and Civil Due Process Rights[,]" *id.;* $8,000,000.00 for "foreseeable losses, mental suffering as a result of the fraudulent and illegal activities of Superior Bank FSB, Bierman and Geesing, Judge Warren Krug and Judge Thomas Rymer[,]" *id.* at 2–3; and $9,700,000.00 as punitive damages "to punish the person(s) that have committed these fraudulent, cruel and excessive criminal activities ... [,] who mis-re[ ]present the justice system because they are officers of the court ... [and i]n particular the racism and discrimination by officers of the legal system and court[,]" *id.* at 3.

**9.** The brief is the only submission that the plaintiff has incorporated into his complaint wherein he articulates the underlying facts that purportedly provide the basis for the relief he is seeking and specifies the state and federal rights that he contends were violated by the defendants.

**10.** The Court acknowledges that the time period for filing a petition for a writ of certiorari in the United States Supreme Court has expired. *See* 28 U.S.C. § 2101(c) (2000) (an appeal must be filed within ninety days after the entry of a judgment or decree). This consequence is of no moment, however, in the Court's resolution of the defendant's motion to dismiss.

§ 1257. He therefore cannot seek redress from this Court because it lacks jurisdiction to entertain his challenges to the Maryland state court decision.

### IV. *Conclusion*

For the reasons set forth above, this Court must dismiss the plaintiff's case because the Court lacks jurisdiction to entertain the plaintiff's claims. This is because the plaintiff is attempting to bring the functional equivalent of an appeal of a state court judgment before this Court, which is precluded by the *Rooker–Feldman* doctrine.[11]

### *ORDER*

Upon consideration of the defendants' motions to dismiss, and for reasons set forth in the Memorandum Opinion accompanying this Order, it is hereby,

**ORDERED** that the defendants' motions to dismiss are **GRANTED** because this Court lacks the subject matter jurisdiction to entertain the plaintiff's case. It is **FURTHER ORDERED** that the above captioned case shall be **DISMISSED WITH PREJUDICE**.

11. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.