**Youming JIN et al., Plaintiffs,**

v.

**MINISTRY OF STATE SECURITY et al., Defendants.**

**Civil Action No. 02–0627 (RMU).**

United States District Court, District of Columbia.

March 24, 2003.

62

Martin Francis McMahon, Washington, DC, for plaintiffs.

Kenneth Anthony Gallo, Clifford, Chance, Rogers & Wells, LLP, Lewis Steven Wiener, Sutherland, Asbill & Brennan, Washington, DC, for defendants.

### *MEMORANDUM OPINION*

URBINA, District Judge.

#### GRANTING DEFENDANT CTC's MOTION TO DISMISS THE PLAINTIFFS' DEFAMATION CLAIM

### I. INTRODUCTION

This multi-count civil rights and RICO[1] action comes before the court on defendant China Television Corporation's ("CTC") motion to dismiss. The plaintiffs, 51 Falun Gong practitioners who are visiting Chi-

---

**1.** Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*

nese nationals, U.S. residents, or U.S. citizens, allege violations of their rights under the Constitution and federal and state law by persons and entities associated with the People's Republic of China ("PRC"). The defendants are the PRC Ministry of State Security, the PRC Ministry of Public Security, PRC national broadcasting entity China Central Television ("CCTV"), various PRC embassy and consulate officials, several unidentified persons employed by the PRC, the head of a Chinese–American association, and California corporation CTC (collectively, "the defendants"). CTC now moves to dismiss the defamation claim against it pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). Because the court concludes that the plaintiffs' defamation claim is time-barred, the court grants CTC's motion to dismiss.

## II. BACKGROUND

### A. Factual Background

The plaintiffs all practice Falun Gong, a self-improvement practice or discipline similar to Tai Chi that is rooted in ancient Chinese culture. Am. Compl. ¶ 36. According to the plaintiffs, Falun Gong has become a very popular form of exercise and meditation in China since the government loosened controls after the Cultural Revolution. *Id.* ¶ 37. The plaintiffs report that since its introduction into China in 1992, the number of Falun Gong practitioners has grown rapidly, reaching more than 70 million in number by 1999. *Id.*

The plaintiffs alleged that at first, Falun Gong was well received in China for its health benefits, receiving numerous awards and counting among its practitioners many government officials and senior Communist members. *Id.* ¶ 38. The plaintiffs claim, however, that the Chinese government began to perceive the spectacular growth of Falun Gong as a threat to state security, stability, and economic de-

velopment. *Id.* ¶¶ 39–40. The plaintiffs assert that in 1996, after the government's early efforts to control the practice met with only limited success, the government began a campaign to marginalize and eventually eradicate Falun Gong by publishing a series of negative articles about the practice in state-run newspapers. *Id.* ¶ 41. Over the next few years, the government allegedly escalated its efforts by issuing a nationwide ban on Falun Gong literature, starting a media campaign to characterize Falun Gong as a cult whose members advocated criminal activity, and harassing, physically intimidating, detaining, and arresting practitioners without cause. *Id.* ¶¶ 41–43. In 1999, after a peaceful demonstration by Falun Gong practitioners for the release of their fellow practitioners, PRC president Jiang Zemin allegedly directed government officials to utilize the full resources of the state to eradicate the Falun Gong practice both in China and overseas. *Id.* ¶¶ 46–47. The government's efforts within China allegedly resulted in the murder of 1,500 Falun Gong practitioners, the arrest and detention of up to 50,000 practitioners, the torture of thousands of practitioners, the incarceration of practitioners in labor/re-education camps and mental institutions, and the expulsion of practitioners from educational institutions and employment. *Id.* ¶¶ 49–50.

In the United States, the Chinese government allegedly engaged in many of the same tactics of threats and coercion that it used in China. *Id.* ¶ 53. The plaintiffs assert that in a propaganda campaign aimed at overseas Chinese residents, the government sought to use mass media outlets to disparage Falun Gong leadership and vilify the Falun Gong practice. *Id.* Toward that end, contend the plaintiffs, the Chinese government used its embassy and consulate officials to orchestrate a na-

tionwide conspiracy of disinformation against Falun Gong practitioners, distributing negative programming produced in China throughout major U.S. television markets and preventing Falun Gong practitioners from having equal access to those outlets.[2] *Id.* In particular, the plaintiffs allege that on January 30, 2001, the government staged a limited-access news event ("the staged news event") at which several individuals identified as Falun Gong practitioners set themselves on fire in Tiananmen Square. *Id.* ¶¶ 55, 221–23. In February 2001, CTC promoted and distributed the television footage of the staged news event throughout the United States. *Id.* ¶¶ 56–57. According to the plaintiffs, the CTC footage was accompanied by a narrative that defamed certain Falun Gong practitioners living in the United States as advocates of suicide, intra-family violence, anti-family values, and cult worship. *Id.* In October and November 2001, the footage was re-broadcast in the top five U.S. markets for Chinese Americans. *Id.* ¶¶ 59, 234. In December 2001, the footage was re-broadcast by CCTV as one of 2001's top stories. *Id.* ¶ 61. Moreover, the plaintiffs allege that ministry and embassy officials disseminated thousands of videotape copies of the footage to various federal and state officials, and incorporated the contents of the footage as well as further defamatory statements onto the Chinese embassy's website. *Id.* ¶¶ 62, 65, 235–36, 238. Finally, the plaintiffs assert that the officials issued threats to and took other actions against city officials who issued proclamations in support of Falun Gong practitioners. *Id.* ¶¶ 62–70.

Based on these and other actions, nine of the plaintiffs bring one count of defamation against CTC, CCTV, the defendant ministries, and the embassy and consulate officials. *Id.* ¶¶ 215–39. The plaintiffs allege that as a result of the defamation, they have had their reputations impugned, have been labeled cult leaders and terrorists, have been vilified and cursed by members of the Chinese–American community, and have been disowned by family members. *Id.* ¶¶ 225–26, 229, 231, 233. Accordingly, they seek injunctive and monetary relief. *Id.* ¶ 239.

## B. Procedural History

On April 3, 2002, the plaintiffs filed their original complaint. On July 5, 2002, the plaintiffs filed an amended complaint as a matter of right. On August 19, 2002, CTC filed a motion to dismiss the defamation claim pursuant to Rule 12(b)(1) and (6). The court now turns to CTC's motion to dismiss.

## III. ANALYSIS

## A. The Court Denies Defendant CTC's Motion to Dismiss for Lack of Subject–Matter Jurisdiction

### 1. Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *Tremel v. Bierman & Geesing, L.L.C.*, 251 F.Supp.2d 40, ——, 2003 WL 721911, at *2 (D.D.C. Feb. 27, 2003); *Rasul v. Bush*, 215 F.Supp.2d 55, 61 (D.D.C. 2002). In considering a motion to dismiss for lack of subject-matter jurisdiction, the

---

**2.** According to the plaintiffs, this overseas campaign also included authorization of bias-related crimes, such as assault and battery, destruction and property theft, interference with communications, and orchestrated efforts to influence U.S. officials by labeling Falun Gong a cult and its practitioners as terrorists. *Id.* ¶ 54.

court should accept as true all of the factual allegations contained in the complaint. *Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839, 844 (D.C.Cir.2002) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).

■ Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, however, a court resolving a motion to dismiss under Rule 12(b)(1) must give the complaint's factual allegations closer scrutiny than required for a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F.Supp.2d 9, 13 (D.D.C.2001) (citing 5A Wright & Miller, FED. PRAC. & PROC. CIV. 2d § 1350). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C.Cir.1986), *vacated on other grounds*, 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). Instead, to determine whether it has jurisdiction over the case, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C.Cir.1992).

## 2. The Court Has Subject–Matter Jurisdiction Over the Plantiffs' Defamation Claim

In this case, the plaintiffs assert subject matter jurisdiction pursuant to several statutory grants of jurisdiction. Am. Compl. ¶ 1 (citing 28 U.S.C. §§ 1330(a), 1331, 1343(a), 1351 & 1367). Because the defamation claim arises under state law, CTC's jurisdictional challenge focuses on the plaintiffs' assertion of supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Mot. to Dismiss at 8–11; Reply at 6–7. Asserting that the defamation claim is "completely different from and unrelated to the other causes of action asserted in the complaint" because it pertains to Falun Gong practitioners as a group while the other claims pertain to individual plaintiffs, and that there are "complex questions of state law" raised by the defamation claim, CTC urges the court to dismiss the defamation count. Mot. to Dismiss at 8–9. In response, the plaintiffs argue that the court has the discretion to assert supplemental jurisdiction for claims that a plaintiff ordinarily would expect to try in one proceeding. Pls.' Opp'n at 9–10.

■ "When a federal court has an independent basis for exercising federal jurisdiction, it may, in certain circumstances, also exercise supplemental jurisdiction over related claims under state law." *Women Prisoners of the Dist. of Columbia Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 920 (D.C.Cir.1996). To determine when the assertion of supplemental jurisdiction is appropriate, the district court should apply a two-part test. *Id.* (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). The court first must determine whether the state and federal claims derive from a common nucleus of operative fact. *Id.* If so, "the court has the power, under Article III of the Constitution, to hear the state claim." *Id.* The court then must decide whether to exercise its discretion to assert jurisdiction over the state claim. *Id.* (noting the Supreme Court's observation that supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right"). In deciding whether to assert supplemental jurisdiction over a state claim, the court should consider whether judicial economy, convenience and fairness to litigants weigh in favor of doing so. *Id.* A court may decline to exercise supplemental jurisdiction, however, if the state claim raises a novel or complex issue of state law, substantially predominates over the federal claims, or remains after

the court has dismissed the federal claims. *Id.* at 921 (citing 28 U.S.C. § 1367(c)).

In this case, because the plaintiffs' claims include claims under federal civil rights and conspiracy statutes, they have an independent basis for federal jurisdiction. *Id.*; Am. Compl. ¶ 1. Accordingly, applying the two-part test for supplemental jurisdiction, the court first looks to see whether the plaintiffs' defamation claim shares a common nucleus of operative facts with the other claims, and concludes that it does. *Women Prisoners,* 93 F.3d at 920.

 Here, the facts on which the plaintiffs base their defamation claim allege a series of steps—including the production and distribution of video, print, and other communications targeted at the Chinese–American community and public officials—taken by various defendants to vilify and defame the defendants. *E.g.,* Am. Compl. ¶¶ 51–76. Whether or not the claim identifies the plaintiffs individually or collectively, the facts supporting the defamation claims are linked to the facts supporting the remaining claims because they form a key part of an alleged overarching campaign to abridge and nullify the plaintiffs' rights and liberties. *Id.* at 1. Because the defamation claim and the federal claims are related to the point that the plaintiffs "would ordinarily be expected to try them all in one judicial proceeding," the court concludes that the claims do derive from a common nucleus of operative fact. *Women Prisoners,* 93 F.3d at 920–21 (finding a common nucleus because the state and federal claims revolved around the city's decision to re-assume custody of its female prisoners and its alleged failure to provide for their needs); *LaShawn v. Barry,* 87 F.3d 1389, 1391 (D.C.Cir.1996) (concluding that a common nucleus existed because the state and federal claims related to the city's allegedly inept administration of its foster care system); *Prakash v. Am. Univ.,* 727 F.2d 1174, 1183 (D.C.Cir.1984) (determining that a common nucleus existed because the local and federal labor claims were related to the plaintiff's employment contract dispute with the defendant). The court therefore has the power to hear the state claim. *Women Prisoners,* 93 F.3d at 920–21.

As for the second part of the test, the court concludes that the interests of judicial economy, convenience, and fairness support the exercise of supplemental jurisdiction. *Id.* at 920–21. CTC contends that because the plaintiffs are domiciled in different states, the defamation claim implicates the defamation laws of multiple jurisdictions. Def.'s Mot. at 9–10. According to CTC, the resulting choice-of-law issues and the diverse applications of defamation elements by state courts create complexities that weigh against supplemental jurisdiction. *Id.* at 9–11. The court is reluctant, however, to equate difficulty with complexity. Here, CTC asserts only that the states differ in their application of the elements of defamation. *Id.* at 10. While determining the correct application of the elements may be time-consuming, it does not mean the local law is "so important and so unsettled" that the court must decline jurisdiction. *Dist. of Columbia Common Cause v. District of Columbia,* 858 F.2d 1, 10 (D.C.Cir.1988). Rather, complexity exists when there is significant uncertainty as to the law itself. *Bad Frog Brewery, Inc. v. New York State Liquor Auth.,* 134 F.3d 87, 102 (2d Cir. 1998) (declining to exercise jurisdiction in light of significant uncertainty as to whether state law implied a private right of action for damages or entitled local commissioners to immunity for their actions). Accordingly, the court concludes that the defamation claim does not raise complex issues of state law that outweigh the

court's interest in promoting judicial economy.

In sum, because the state and federal claims share a common nucleus of operative facts, and the court has decided to exercise its discretion to hear the state claim, the court may assert supplemental jurisdiction in this case. *Women Prisoners*, 93 F.3d at 920–21;

## B. The Court Grants Defendant CTC's Motion to Dismiss for Failure to State a Claim

### 1. Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(6)

For a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide a short and plain statement of the claim and the grounds on which it rests. FED.R.CIV.P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim. FED.R.CIV.P. 12(b)(6); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The plaintiff need not plead the elements of a prima-facie case in the complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (holding that a plaintiff in an employment-discrimination case need not establish her prima-facie case in the complaint); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C.Cir.2000). Thus, the court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C.Cir.1996). In deciding such a motion, the court must accept all of the complaint's well-pled factual allegations as true and draw all reasonable inferences in the nonmovant's favor. *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683. The court need not accept as true legal conclusions cast as factual allegations. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994).

■ A defendant may raise the affirmative defense of statute of limitations via a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint. *Smith–Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C.Cir.1998). Because statute of limitations issues often depend on contested questions of fact, however, the court should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint. *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C.Cir. 1996). Rather, the court should grant a motion to dismiss only if the complaint on its face is conclusively time-barred. *Id.; Doe v. Dep't of Justice*, 753 F.2d 1092, 1115 (D.C.Cir.1985). If "no reasonable person could disagree on the date" on which the cause of action accrued, the court may dismiss a claim on statute of limitations grounds. *Smith v. Brown & Williamson Tobacco Corp.*, 3 F.Supp.2d 1473, 1475 (D.D.C.1998) (citing *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 463 n. 11 (D.C.Cir.1989)).

### 2. The Plaintiffs' Defamation Claim is Time–Barred

The plaintiffs' sole claim against CTC is that of defamation. Am. Compl. ¶¶ 215–39. CTC argues, however, that the defamation claim is barred by the District of Columbia's one-year statute of limitations. Mot. to Dismiss at 7. CTC points out that

the basis for the plaintiffs' defamation claim against CTC is its alleged February 2001 promotion and distribution of the staged news event in target markets in the United States. *Id.* Because the plaintiffs did not file their complaint until April 2002, CTC concludes that the plaintiffs' defamation claim falls outside the one-year statute of limitations and therefore is time-barred. *Id.* In response, the plaintiffs argue that since February 2001, CCTV and various embassy officials have continued to re-broadcast the staged news event footage that CTC originally published and distributed, thereby effectively tolling the statute of limitations. Pls.' Opp'n at 7–8. The plaintiffs also emphasize that this circuit disfavors dismissal of a complaint based on statute of limitations grounds, and urges the court to deny CTC's motion. *Id.* at 8–9.

■ Because defamation is a cause of action that arises under state law, the plaintiffs' defamation claim implicates the defamation laws of the six jurisdictions in which the nine plaintiffs are domiciled: California, the District of Columbia, Illinois, Maryland, New York, and Virginia. Am. Compl. ¶ 215. When, as here, deciding state-law claims under supplemental jurisdiction, the court applies the choice-of-law principles of the forum jurisdiction, which in this case is the District of Columbia. *Young Women's Christian Ass'n of the Nat'l Capital Area, Inc. v. Allstate Ins. Co. of Canada,* 275 F.3d 1145, 1150 (D.C.Cir.2002); *Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.,* 129 F.3d 143, 148 (D.C.Cir.

1997). Because the District of Columbia choice-of-law rules treat statutes of limitations as procedural, the rules require application of the District of Columbia statute of limitations.[3] *A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.,* 62 F.3d 1454, 1458 (D.C.Cir.1995)

■ In the District of Columbia, the statute of limitations for defamation claims is one year from the date of first publication. D.C.CODE § 12–301(4); *Wallace v. Skadden, Arps, Slate, Meagher & Flom,* 715 A.2d 873, 882 (D.C.1998); *Mullin v. Washington Free Weekly, Inc.,* 785 A.2d 296, 298 n. 2 (D.C.2001). District of Columbia courts adhere strictly to the one-year limitation. *Mullin,* 785 A.2d at 298 (deeming a complaint filed one year and three days after publication of an allegedly defamatory newspaper article as time-barred). Moreover, the District of Columbia follows the "single publication" rule, whereby publication of defamatory matter "gives rise to but one cause of action for libel, which accrues at the time of the original publication." *Ogden v. Ass'n of the United States Army,* 177 F.Supp. 498, 502 (D.D.C.1959). Because the statute of limitations runs from the date of the original publication, any subsequent sale or delivery of a copy of the publication does not create a new cause of action. *Id.*

■ Assuming *arguendo* that the nine plaintiffs have pled the necessary elements for a defamation claim, their claim nonetheless fails because it is barred by the statute of limitations. The plaintiffs are seeking recovery from CTC for promoting

---

**3.** Because the statutes of limitations of the other jurisdictions also bar defamation actions after one year from date of publication, with no allowance for "continuing wrongs" or new causes of action for republication, analysis of the plaintiffs' defamation claim under the law of those jurisdictions would lead to the same result. *E.g., Cusano v. Klein,* 264 F.3d 936, 949 (9th Cir.2001) (applying California law in diversity suit); *Bagwell v. Peninsula Reg'l Med. Ctr.,* 106 Md.App. 470, 665 A.2d 297, 316 (1995); *Muzikowski v. Paramount Pictures,* 322 F.3d 918, 923–24 (7th Cir.2003) (applying Illinois law in diversity suit); *Firth v. State,* 98 N.Y.2d 365, 368, 747 N.Y.S.2d 69, 775 N.E.2d 463 (2002); *Cobbs v. Commonwealth,* 2001 WL 322728, at *1 (Va. Cir. Ct. Jan. 31, 2001).

and distributing footage of the staged news event in target markets in the United States in February 2001. *E.g.*, Am. Compl. ¶¶ 221–23. The plaintiffs did not file their original complaint until April 3, 2002, more than one year after CTC's alleged defamatory broadcast. Because the District of Columbia statute of limitations begins to accrue on first publication (here, February 2001), the plaintiffs' defamation claim against CTC is time-barred. *Mullin*, 785 A.2d at 298 n. 2 (citing *Ogden*, 177 F.Supp. at 502). Although the plaintiffs argue that the statute of limitations was tolled by the subsequent re-broadcast of the CTC footage, the plaintiffs' complaint and later submissions consistently allege that it was CCTV and embassy officials— not CTC—who were responsible for any subsequent re-broadcasts or dissemination. Am. Compl. ¶ 61–62; Pl.'s Opp'n at 7–8.

Although the court should hesitate before dismissing a complaint as time-barred, in this case "no reasonable person could disagree" that the plaintiffs' defamation claim—filed several weeks after the February 2001 date on which the CTC footage allegedly first was published—is conclusively time-barred. *Smith*, 3 F.Supp.2d at 1475; *Firestone*, 76 F.3d at 1209. Accordingly, the court grants CTC's motion to dismiss the plaintiffs' defamation claim as outside the one-year period prescribed by the statute of limitations. *E.g.*, *Nihiser v. White*, 211 F.Supp.2d 125, 132 (D.D.C. 2002).

## IV. CONCLUSION

For the foregoing reasons, the court grants CTC's motion to dismiss the plaintiffs' defamation claim. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 24th day of March, 2003.